**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Azam Ahmed, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Cigna Health Management, Inc., Wellfleet Insurance, and Wellfleet New York Insurance Company, <br><br> Defendants. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Azam Ahmed ("Plaintiff" or "Mr. Ahmed"), individually and on behalf of all others similarly situated, brings this class action lawsuit on behalf of the classes defined below, including, without limitation, insureds covered under insurance policies issued by Defendant Wellfleet New York Insurance Company, formerly known as Atlanta International Insurance Company, whose requests for preauthorization of medical goods, services, treatments, or prescription drugs under their policy were improperly denied by Defendant Cigna Health Management, Inc., a subcontractor of the policy administrator, Defendant Wellfleet Insurance, (formerly known as Consolidated Health Plan and doing business as Wellfleet), in violation of the terms of the insurance policy and applicable law, as well as all persons whose requests for preauthorization of medical goods, services, treatments, or prescription drugs under any health plan or policy were improperly denied by Defendant Cigna Health Management, Inc.

Plaintiff states as follows:

## INTRODUCTION

1.    Plaintiff Azam Ahmed, a New York University ("NYU") student, first purchased NYU's student health insurance plan in or around August 2016, which was issued by Atlanta International Insurance Company, now Wellfleet New York Insurance Company ("Wellfleet NYIC"), and administered by Consolidated Health Plans, now Wellfleet Insurance ("Wellfleet Insurance"). The plan, which Mr. Ahmed purchased, covered the period from August 2016 to November 20, 2018. During that time Mr. Ahmed paid in excess of $7,500 for this insurance coverage.

2.    Years prior, doctors diagnosed Mr. Ahmed with a congenital birth defect, resulting in numerous skeletal abnormalities and related symptoms including headaches, jaw-joint pain, jaw clicking, and teeth grinding. Mr. Ahmed also suffered from facial asymmetry, issues with chewing and articulation, breathing, and jaw locking.

3.    In May 2017, on the advice of his oral maxillofacial surgeon, Mr. Ahmed underwent surgery to address symptoms resulting from these skeletal abnormalities. Wellfleet Insurance required participants in the NYU student health plan to seek preauthorization for procedures like the one received by Mr. Ahmed. Mr. Ahmed's preauthorization request was approved by Wellfleet Insurance via Hines & Associates, a vendor hired by Wellfleet Insurance to perform medical necessity reviews.

4.    Although Mr. Ahmed's surgery was partially successful, it did not fully resolve his symptoms, particularly the pain and breathing issues, which he continued to experience. On December 15, 2017, his same surgeons determined that a second surgery was necessary to further improve his skeletal deformity and remedy his ongoing pain and breathing problems, which would

entail septoplasty, rhinoplasty, and jaw augmentation. Mr. Ahmed, working with his doctors, sent a preauthorization request to Wellfleet Insurance.

5.      On December 21, 2017, despite the referral letter explaining why the second surgery was medically necessary, Wellfleet Insurance, now acting through Cigna Health Management, Inc. ("Cigna")—a licensed utilization review agency hired by Wellfleet Insurance to replace Hines & Associates and review health care services for medical necessity—summarily denied the preauthorization request in letters to Dr. David Hirsch, Plaintiff's oral maxillofacial surgeon, as well as Mr. Ahmed. The letters indicated that the insurance provider deemed the surgery as not medically necessary, directly contradicting the professional medical opinions of Dr. Hirsch and Mr. Ahmed's other doctors.

6.      As its rationale for the denial, Cigna stated that the augmentation of the mandible (one of the three procedures recommended by Mr. Ahmed's surgeons) was a purely cosmetic procedure and therefore not medically necessary. This denial, however, ignored the reasons provided by Mr. Ahmed's surgeons in the preauthorization letter that explained the necessity of the procedure.

7.      On January 8, 2018, Cigna sent a second letter to Mr. Ahmed and another of his treating surgeons, Dr. Charles Thorne, in which Cigna denied preauthorization for the remaining two procedures, the septoplasty and rhinoplasty. This letter also cited lack of medical necessity as the reason for denial.

8.      Cigna's denials were made without properly reviewing Plaintiff's health benefits and were inconsistent with the terms of the insurance policy under which Plaintiff was covered. The denials violated the policy's provision for how medical necessity is determined. Both letters

state that "**Cigna's review was limited to medical necessity alone. Cigna, is not a claims payor and has not reviewed your health benefits plan to determine coverage.**"

9.    The denials also ignored the referral letters from Plaintiff's provider and applicable law.

10.    In March 2023, ProPublica published an investigative report detailing Cigna's utilization of a system that indiscriminately denies payments for claims and may lead to improper denials of coverage for medically necessary tests and procedures.[1] The report states that claims were routinely denied by Cigna's algorithm known as PXDX, and then sent to Cigna's "medical directors" who would issue denials without reviewing the patient's claim file. According to the report, these medical directors spent an average of *1.2 seconds* on each case.

11.    The U.S. House of Representatives Committee on Energy and Commerce, in a letter to the President and CEO of the Cigna Group asking for information in light of the ProPublica investigation, noted that while only five percent (5%) of individuals covered under insurance policies whose claims were denied by Cigna's medical necessity algorithm appealed the decision, 20% of members enrolled in Medicare Advantage plans whose claims were similarly denied appealed the decision, and a full *80% of those denials were reversed on appeal*. The letter suggested that Cigna's improper denials on medical necessity grounds were "leading to patients paying out-of-pocket for medical care that should be covered under their insurance policy contract."[2]

_____

[1] Patrick Rucker, Maya Miller, and David Armstrong, *How Cigna Saves Millions by Having its Doctors Reject Claims Without Reading Them*, ProPublica, (Mar. 25, 2023), https://www.propublica.org/article/cigna-pxdx-medical-health-insurance-rejection-claims.
[2] Letter from House of Representatives Committee on Energy and Commerce to David Cortani, President and CEO of Cigna, (May 16, 2023), https://energycommerce.house.gov/posts/e-and-c-

12.     Given his surgeons' detailed letters to Cigna addressing the medical necessity of the second surgery, Mr. Ahmed alleges that his claim was denied through the use of improper policies and procedures, for example, an algorithm such as PXDX. Incredibly, the Cigna medical directors that signed off on the denials were an obstetrician-gynecologist and a gastroenterologist respectively, neither of whom had experience with maxillofacial congenital birth defects and skeletal abnormalities, nor training in the appropriate surgical methods of addressing those issues. They were ill-equipped and untrained to determine medical necessity with respect to Plaintiff's surgery.

13.     Whether Mr. Ahmed's surgical claim was denied due to the usage of an algorithm or an actual review by Cigna's unqualified medical directors is irrelevant—either way, the denials were improper. Defendants failed to use reasonable and good faith standards to evaluate the claims of Plaintiff and Class members, ignored the terms and conditions of Mr. Ahmed's insurance policy, and overruled the recommendations of Plaintiff's skilled and knowledgeable medical providers.

14.     Defendants have engaged in an improper and illegal scheme to defraud Plaintiff and the Class, as defined below, by issuing denials of coverage for medical procedures through the improper use of corporate policies and/or practices such as: (a) computer algorithms including but not limited to the PXDX system; (b) the improper use of so-called "medical directors" or other staff who are not qualified to render opinions of medical necessity because of their lack of subject-matter expertise; and/or (c) failing to properly review Class members' actual files, all in derogation of their duties of good faith and fair dealing in determining coverage.

---

republicans-press-cigna-for-clarification-after-investigative-report-accuses-insurance-company-of-denying-claims-without-reading-them.

15.    The improper denials of coverage caused Plaintiff and Class members to delay and/or forego medically necessary care, to pay out-of-pocket for health and medical services that were in fact covered under their insurance policies, and to incur additional costs and economic losses related to the delay in receiving care.

16.    Defendants used Cigna's PXDX system and other improper preauthorization methods, policies, practices, and/or procedures to fraudulently, intentionally, negligently, and/or recklessly deny coverage for medical care that should have been covered under the terms and conditions of the insurance policies covering Plaintiff and Class members, and concealed from them that claims for covered services would be improperly denied based on the use of these improper methods, policies, practices, and/or procedures.

17.    Cigna created, developed, managed, and administered a scheme to fraudulently deny insurance coverage for medically necessary services and procedures for the benefit of itself and others, including, without limitation, Defendants Wellfleet NYIC and Wellfleet Insurance. Discovery will show that Cigna marketed itself to health insurance plans and their administrators as a means toward reducing health care spending, although its scheme to do so was fraudulent and in breach of its duties.

18.    Defendants Wellfleet NYIC and Wellfleet Insurance are co-conspirators with Defendant Cigna in Cigna's scheme to improperly deny coverage based on improper medical necessity reviews and benefitted from the improper denials. Discovery will show that Wellfleet NYIC and Wellfleet Insurance continued to utilize Cigna for medical necessity reviews despite knowing that Cigna was making coverage denials without reviewing the terms and conditions of the actual insurance policies issued by Wellfleet NYIC and administered by Wellfleet Insurance.

Discovery will further show that all Defendants participated in this fraudulent scheme each for their own financial gain.

19.    All insurance contracts issued in the State of New York have an implied covenant of good faith and fair dealing, and as such, Wellfleet Insurance, as administrator of the NYU student health plan, had a duty to Mr. Ahmed and those similarly situated in the State of New York to promptly and fully investigate all claims for medical benefits in good faith and to pay covered claims. Instead, Wellfleet Insurance hired and allowed Cigna to deny coverage on fraudulent and/or wrongful grounds of a so-called absence of medical necessity in direct contravention of the terms and conditions of the insurance policies, for the benefit of all Defendants. The improper denials of medically necessary services and procedures constitute a breach of the insurance policy and of the implied covenant of good faith and fair dealing.

20.    The improper denial of services and procedures pursuant to the methods, policies, practices, and/or procedures alleged herein directly and proximately damaged Plaintiff, who had to pay out-of-pocket to cover costs that Defendants should have paid. Defendants' conduct injured Plaintiff and Class members who have a well-established property interest in their claims for insurance coverage under their contracts.

21.    According to Cigna's 2022 Healthcare Claims Denial Report to the New York State Department of Financial Services,[3] in 2022 alone, Cigna denied 22,313 claims of New York policyholders totaling $19,751,591 in billed charges, on the grounds that the requested medical services or procedures were not medically necessary. Similarly, Wellfleet NYIC denied 8,355

---

[3] Cigna Health and Life Insurance Company, *New York State Department of Financial Services Health Care Claims Denial Report*, (Jan. 1, 2022 – Dec. 31, 2022), https://www.dfs.ny.gov/reports_and_publications/health_care_claim_reports_2022.

claims of New York policyholders in 2022 alone, totaling $5,159,269 in billed charges, on the grounds that the requested medical service or procedures were not medically necessary.

22.     As a result of the foregoing conduct, this action asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, fraudulent inducement, negligent misrepresentation, and unjust enrichment, and seeks monetary, injunctive, and declaratory relief.

## JURISDICTION AND VENUE

23.     This Court has original diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). At least one member of the proposed class is a citizen of a different state than Defendants, the number of proposed Class members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. 28 U.S.C. § 1332(d)(2)(A).

24.     This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged herein took place in the State of New York; Defendants are authorized to do business in the State of New York; Defendants conduct business in the State of New York and in this District; Defendants have principal executive offices and provide medical products and services in the State of New York and this District; Defendants advertise and promote their services in the State of New York and this District; Defendants have sufficient minimum contacts with the State of New York; Defendants administer health plans from the State of New York; and/or Defendants otherwise intentionally avail themselves of the markets in the State of New York through the marketing and sale of insurance and related products and services in this State so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted occurred in this District. Venue is also proper in this District pursuant to 18 U.S.C. § 1965 because Defendants reside, are found, have an agent, or transact their affairs in this District, and the ends of justice require that any Defendant residing elsewhere be brought before this Court.

## PARTIES

26.    Plaintiff Azam Ahmed is an adult United States citizen currently domiciled in Abu Dhabi with a permanent place of residence in San Diego, CA, and is a former NYU student who purchased NYU's student health insurance plan. Plaintiff received a denial for medically necessary surgical procedures from Cigna, while having coverage for those procedures under the NYU health insurance plan issued by Wellfleet NYIC and administered by Wellfleet Insurance.

27.    Defendant Cigna Health Management, Inc. is a subsidiary of Cigna Corporation and is organized and existing under the laws of Delaware with a principal place of business in Pennsylvania. Cigna provided the medical necessity review for Wellfleet NYIC's health plan as administered by Wellfleet Insurance.

28.    Defendant Wellfleet Insurance, formerly Consolidated Health Plan, is a corporation organized and existing under the laws of Indiana with a principal place of business in Massachusetts. Wellfleet Insurance is Wellfleet NYIC's designated administrator of the NYU student health insurance plan that Plaintiff purchased.

29.    Defendant Wellfleet New York Insurance Company, formerly Atlanta International Insurance Company, is a corporation organized and existing under the laws of Indiana with a principal place of business in New York. Wellfleet NYIC is the insurance company that provided the health insurance policy to Plaintiff when he purchased the NYU student health insurance plan.

## FACTUAL ALLEGATIONS

30.     Mr. Ahmed was diagnosed with a congenital birth defect that gave rise to skeletal abnormalities. Consequently, he suffered from serious life-affecting symptoms including, without limitation, headaches, jaw-joint pain, jaw clicking, teeth grinding, facial asymmetry, issues with chewing and articulation, breathing, and jaw locking.

31.     On or around May 22, 2017, Plaintiff underwent an intensive maxillofacial surgery lasting over seven (7) hours to address many of these abnormalities and symptoms, including his Temporomandibular Joint ("TMJ") disorder and related symptoms. The almost full day surgery included double jaw orthognathic surgery.

32.     Insurance medical reviewers at Wellfleet Insurance and Hines & Associates—the policy claims utilizer for Wellfleet Insurance prior to its hiring and association with Defendant Cigna—made independent and corresponding evaluations of the claim, classifying the May 22, 2017 surgery as medically necessary pursuant to specific plan provisions in the insurance certificate applicable to Mr. Ahmed.

33.     On or around October 10, 2017, after observing Plaintiff's healing and recovery, Plaintiff's doctors, Dr. David Hirsch MD, DDS, an oral maxillofacial surgeon, and Dr. Charles Thorne MD, a craniofacial plastic surgeon, agreed that while the May 22, 2017 surgery partially improved the situation for Mr. Ahmed, it also resulted in secondary complications and issues. Complex movements and osteotomies, *i.e.*, medically necessary fractures of the jaw, as well as placement of titanium plates, screws, and other hardware in Mr. Ahmed's upper jaw had resulted in nasal bone deformation in functionality and appearance, deviation of septum, and indents on Mr. Ahmed's mandible, *i.e.*, the lower jaw.

34.     Consequently, Drs. Hirsch and Thorne determined that another surgery was necessary to correct these secondary complications. In consultation with his doctors, Mr. Ahmed scheduled a second surgery to address these issues for January 10, 2018. According to his surgeons, the second surgery was medically necessary to address and correct the remaining skeletal abnormalities and related symptoms, as well as those caused by the prior surgery.

35.     On or around December 15, 2017, Dr. Hirsch sent a letter to Wellfleet Insurance explaining Mr. Ahmed's need for the surgery, with Dr. Hirsch's assessment that the procedure was medically necessary from a medical standpoint. *See* Exhibit A.

36.     In the letter, Dr. Hirsch explained that Mr. Ahmed was diagnosed with Class III skeletal malocclusion and right side craniofacial microsomia and was suffering from degenerative changes due to his lower dental arch being located in front of the upper dental arch. *Id.* Dr. Hirsch further detailed Mr. Ahmed's skeletal abnormalities including how they affected Mr. Ahmed's quality of life, such as by having negative impacts on his ability to eat and speak, causing him to choke while eating, damaging the soft tissues in his mouth, and resulting in a speech impediment not alleviated by the first surgery. *Id.* Dr. Hirsch explained that surgery was the only way to correct the jaw issues and relieve pressure on the joint. *Id.*

37.     Dr. Hirsch included in his letter excerpts from the insurance guidelines for related covered services found in Mr. Ahmed's insurance certificate, including that it covered the following services and treatment:

> [R]econstructive surgery because of congenital disease or anomaly of a covered [individual] which has resulted in a functional defect.
> …
>
> Oral surgical procedures for jaw bones or surrounding tissue and dental services necessary due to congenital disease or anomaly.
>
> Oral surgical procedures required for the correction of a non-dental physiological

11

condition which has resulted in a severe functional impairment.

[R]econstructive and corrective surgery . . . when it is . . . [p]erformed to correct a congenital birth defect of a covered [individual] which has resulted in a functional defect[.]

*Id.*

38.     In closing, Dr. Hirsch's letter stated that Plaintiff Ahmed "needs additional jaw surgery to correct the ***functional defect resulting from his skeletal anomaly***. This type of procedure is medically necessary from a medical standpoint due to undue stress on his dentition and TMJ along with his inability to articulate and masticate properly." *Id.* (emphasis added).

39.     On or around December 18, 2017, Mr. Ahmed's other surgeon, Dr. Thorne, also sent a letter requesting preauthorization of medical benefits related to the surgery scheduled for January 10, 2018. *See* Exhibit B.

40.     Dr. Thorne explained that Mr. Ahmed's prior surgery "resulted in a deviation of the nasal tip and a deviated septum ***that obstructs his airway***" and "recommend[ed] that he undergo submucous resection of the nasal septum and a re-do reconstructive rhinoplasty." *Id.* (emphasis added).

41.     On or around December 21, 2017, Cigna, the utilization review agency that replaced Hines & Associates, issued a denial letter to Mr. Ahmed with respect to the portion of the second surgery for which Dr. Hirsch requested preauthorization, stating, without elaboration, that the service was not medically necessary. *See* Exhibit C.

42.     Cigna issued a similar denial letter that same day to Dr. Hirsch. *See* Exhibit D.

43.     On January 8, 2018, Cigna issued a denial letter to Dr. Thorne for the remaining two portions of the second surgery for which Dr. Thorne sought preauthorization, stating that the services were not medically necessary. *See* Exhibit E.

44.    None of Cigna's letters attached as Exhibits C, D, and E addressed the specific facts and narrative that both surgeons had submitted explaining in detail and supporting why the additional procedures to be performed in the second surgery were medically necessary.

45.    Dr. Hirsch conducted a peer-to-peer review with a Cigna physician on January 25, 2018, but the outcome did not change. Without issuing any additional adverse benefit determination or other documentation (despite being required to do so under the terms of the NYU student health plan), Cigna continued to stand by its decision that the second surgery was not medically necessary.

### A.    **The Policy**

46.    Defendant Wellfleet NYIC, formerly known as Atlanta International Insurance Company, issued a health insurance policy to NYU, under which health insurance benefits are provided to students and their covered dependents, including Mr. Ahmed (the "Policy"). *See* 2017 Insurance Certificate of Coverage ("Certificate of Coverage"), attached as Exhibit F.

47.    Mr. Ahmed was enrolled under the Policy from August 2016 through August 2018, while he was a student in a master's degree program at NYU, after which he purchased an additional 90 days of continuation coverage, thinking he would be able to have the denials overturned and undergo the second surgery that he required. This continuation coverage ended on November 20, 2018.

48.    The Certificate of Coverage states that under the Policy, Defendant Wellfleet NYIC would provide coverage for "Covered Services," defined as "[t]he Medically Necessary services paid for, arranged, or authorized for You by Us under the terms and conditions of this Certificate." *Id.* at 3, 9.

49.     The Certificate of Coverage states that the determination of whether a health care service, procedure, treatment, test, device, prescription drug, or supply (collectively, "service") is a medical necessity—or medically necessary—is based on a review of:

- [The member's] medical records;
- [Wellfleet NYIC's] medical policies and clinical guidelines;
- Medical opinions of a professional society, peer review committee or other groups of Physicians;
- Reports in peer-reviewed medical literature;
- Reports and guidelines published by nationally-recognized health care organizations that include supporting scientific data;
- Professional standards of safety and effectiveness, which are generally-recognized in the United States for diagnosis, care, or treatment;
- The opinion of Health Care Professionals in the generally-recognized health specialty involved;
- The opinion of the attending Providers, which have credence but do not overrule contrary opinions.

*Id.* at 12.

50.     The Certificate of Coverage provides that "Services will be deemed Medically Necessary" if:

- They are clinically appropriate in terms of type, frequency, extent, site, and duration, and considered effective for Your illness, injury, or disease;
- They are required for the direct care and treatment or management of that condition;
- Your condition would be adversely affected if the services were not provided;
- They are provided in accordance with generally-accepted standards of medical practice;
- They are not primarily for the convenience of You, Your family, or Your Provider;
- They are not more costly than an alternative service or sequence of services, that is at least as likely to produce equivalent therapeutic or diagnostic results;
- When setting or place of service is part of the review, services that can be safely provided to You in a lower cost setting will not be Medically Necessary if they are performed in a higher cost setting. For example, We will not provide coverage for an inpatient admission for surgery if the surgery could have been performed on an outpatient basis.

*Id.*

51.     Preauthorization is a restriction on coverage under a health insurance policy or plan which requires a provider ask the insurance company (or other payer) for permission, a.k.a., authorization, before providing health care services, treatment, prescription drugs or durable medical equipment.

52.     Pursuant to the Certificate of Coverage, preauthorization is required for certain health services, including but not limited to anesthesia services, hospital surgery facility charges, and surgical services. *Id.* at 11, 88, 92. Preauthorization must be requested by the provider at least two days prior to the surgery. *Id.* at 11. After receiving the request, the Certificate of Coverage obligates Wellfleet NYIC to review the planned treatment and determine if it is a covered benefit pursuant to criteria "which may include medical policy, clinical guidelines, pharmacy and therapeutic guidelines." *Id.*

53.     According to the Certificate of Coverage, if no attempt was made to consult with the provider who recommended the Covered Service before making an adverse determination, the Provider may request reconsideration by the same clinical peer reviewer who made the adverse determination or by a designated clinical peer reviewer if the original clinical peer reviewer is unavailable. *Id.* at 63. After the peer-to-peer review, if the adverse determination is upheld, the Certificate of Coverage states that "a notice of adverse determination will be given to You and Your Provider, by telephone and in writing." *Id.*

54.     The Certificate of Coverage provides the right for insureds to seek external appeal of a determination that a service is not medically necessary without going through Cigna's internal appeal process when Cigna "fail[s] to adhere to Utilization Review claim processing requirements []other than a minor violation that is not likely to cause prejudice or harm to [the insured]" if [Cigna] can show the violation was for good cause or due to matters beyond its control and the violation occurred during an ongoing, good faith exchange of information" with the insured. *Id.* at 66.

55.     At all times relevant, Mr. Ahmed was an insured under the Policy. He was covered under the Policy from August 2016 through November 20, 2018.

56.     Plaintiff Ahmed paid monthly premiums in exchange for coverage under the Policy totaling $6,921, and additional amounts for the 90 days of continuation coverage that he obtained for a total of around $8,500, which was supposed to provide him coverage in return for medically necessary services, including the surgery recommended by his doctors, Dr. Hirsch and Dr. Thorne.

57.     Notwithstanding their legal and contractual obligations, Defendants conspired to and did unreasonably deny Mr. Ahmed's and other Class members' claims for insurance coverage for medically necessary covered services as set forth and detailed herein.

**B.     Cigna's Handling of the Preauthorization Requests for Mr. Ahmed's Second Surgery Disregarded the Policy Language**

58.     In 2017, Mr. Ahmed's surgeons recommended a complex surgery to address his congenital birth defect and related conditions and symptoms. Prior to Mr. Ahmed's initial May 22, 2017 surgery, he sought preauthorization under the Policy, and the request was referred to Hines & Associates, a utilization review agency that handled preauthorization review under the Policy at that time. Hines & Associates considered and approved the preauthorization request, determining that the surgery was medically necessary and a covered service under the terms and conditions of the Policy.

59.     Mr. Ahmed's May 22, 2017 surgery, a LeFort I osteotomy including a bilateral sagittal split osteotomy, addressed his skeletal anomaly. According to Dr. Hirsch, Plaintiff's diagnosis of Class III skeletal malocclusion (in which the jaw is improperly positioned due to a growth problem) and right side craniofacial microsomia (a birth defect in which part of the face is smaller than it normally would be) resulted in his lower dental arch being in front of the upper dental arch, causing degenerative changes. *See* Ex. A. Those conditions also included or led to further diagnoses of alveolar arch discrepancy, masticatory dysfunction, mandibular discrepancy to cranium, and TMJ disorder. In turn, these conditions caused Mr. Ahmed to also have hypoplastic

16

maxilla (underdeveloped jaw), mandibular prognathism (protrusion of the lower jaw), and excessive mandibular jaw length.

60.    These conditions made it difficult for Mr. Ahmed to eat and speak. According to Dr. Hirsch, the initial surgery was the only way to correct these jaw-related bite problems and help relieve excessive pressure on the temporomandibular joint. *Id.*

61.    Although the first surgery was successful, Dr. Hirsch's December 15, 2017 letter requesting preauthorization for a second surgery explained that after observing him closely for six months, Mr. Ahmed was still experiencing TMJ pain and having difficulty breathing, and because of this, a second surgery was necessary "to further improve [Mr. Ahmed's] . . . congenital anomaly that is resulting in a functional defect." *Id.* at 2.

62.    Additionally, Mr. Ahmed needed an "additional jaw surgery to correct the functional defect resulting from his skeletal anomaly." *Id.* Dr. Hirsh wrote that "[t]his type of procedure is medically necessary from a medical standpoint due to undue stress on [Mr. Ahmed's] dentition and TMJ along with his inability to articulate and masticate properly." *Id.* Restated, Mr. Ahmed still could not speak and chew properly.

63.    Dr. Hirsch recited several provisions of the Certificate of Coverage in support of the preauthorization request for the second surgery, including:

**Section XVII**
**Exclusions and Limitations**

No coverage is available under this Certificate for the following:

        ***
**D.    Cosmetic Services.**

We do not Cover cosmetic services, Prescription Drugs, or surgery unless otherwise specified, except that **cosmetic surgery shall not include reconstructive surgery** when such service is incidental to or **follows surgery resulting from trauma, infection or diseases of the involved part**, **<u>and</u> reconstructive surgery because of congenital disease**

**or anomaly** of a covered Child **which has resulted in a functional defect.** We also Cover services in connection with reconstructive surgery following a mastectomy, as provided elsewhere in this Certificate. **Cosmetic surgery does not include surgery determined to be Medically Necessary**. If a claim for a procedure listed in 11 NYCRR 56 (e.g., certain plastic surgery and dermatology procedures) is submitted retrospectively and without medical information, any denial will not be subject to the Utilization Review process in the Utilization Review and External Appeal sections of this Certificate unless medical information is submitted.

Ex. F. at 54.

\*\*\*

**Section IX**
**Outpatient and Professional Services**

\*\*\*

**V. Oral Surgery**

We Cover the following limited dental and oral surgical procedures:

- Oral surgical procedures for jaw bones or surrounding tissue and dental services for the repair or replacement of sound natural teeth that are required due to accidental injury. Replacement is Covered only when repair is not possible. Dental services must be obtained within 12 months of the injury.
- **Oral surgical procedures for jaw bones or surrounding tissue and dental services necessary due to congenital disease or anomaly.**
- **Oral surgical procedures required for the correction of a non-dental physiological condition which has resulted in a severe functional impairment.**
- Removal of tumors and cysts requiring pathological examination of the jaws, cheeks, lips, tongue, roof and floor of the mouth. Cysts related to teeth are not Covered.
- **Surgical/nonsurgical medical procedures for temporomandibular joint disorders and orthognathic surgery.**

*Id.* at 32.

\*\*\*

**X. Other Reconstructive and Corrective Surgery**

We Cover reconstructive and corrective surgery other than reconstructive breast surgery only when it is:

- **Performed to correct a congenital birth defect** of a covered Child **which has resulted in a functional defect;**

18

- Incidental to surgery or **follows surgery** that was **necessitated by trauma, infection or disease of the involved part**; or
- **Otherwise Medically Necessary**.

*Id.*

64.    Cigna denied Dr. Hirsch's preauthorization request, finding without explanation and without addressing any of the reasons raised by Dr. Hirsch as to why the surgery was medically necessary, that the requested surgery was not medically necessary. Cigna sent two denial letters in response to the December 15, 2017 letter from Dr. Hirsch: one directly to Mr. Ahmed and a substantially similar denial letter to Dr. Hirsch.

65.    The first letter, directed to Mr. Ahmed, was dated December 21, 2017, and stated that Cigna had "determined the service [was] not medically necessary." The letter further stated that "Cigna's review was limited to medical necessity alone" and Cigna "has not review[ed] your health benefits plan to determine coverage." *See* Ex. C. In the "Why" section, the letter states that Cigna "reviewed information from your health care professional and any policies and guidelines needed to reach this decision." *Id.*

66.    The letter gives the reason for Cigna's denial of the preauthorization request for the second surgery as the request for "an augmentation of the mandible . . . is a cosmetic procedure without functional component, therefore cosmetic." *Id*. No reference was made to Dr. Hirsch's letter providing the many functional grounds for the requested procedure. Specifically, the second surgery would address Mr. Ahmed's ongoing "TMJ pain and difficulty breathing" and "further improve his congenital anomaly that is resulting in a congenital defect." Ex. A.

67.    Cigna also failed to address the reasons provided in Dr. Hirsch's December 15, 2017 letter for the second surgery and the myriad diagnoses of various birth defects and skeletal deformities that were the cause of Mr. Ahmed's condition, as well as his discomfort and need for

additional surgery to address things like being able to articulate and chew properly. Cigna's letter additionally failed to address any of the provisions of the Policy set forth in the Certificate of Coverage and cited in Dr. Hirsch's letter that appear to cover the requested follow-up surgery. Ex. C.

68.     As the denial letter stated, and contrary to the terms of the Policy as set forth in the Certificate of Coverage, Cigna "ha[d] . . . not reviewed [Mr. Ahmed's] . . . health benefits to determine coverage." *Id.* It does not appear as if Cigna reviewed the evidence of medical necessity provided in Dr. Hirsch's December 15, 2017 letter either. The denial letter is signed by Stephen Mintz, M.D., Medical Director, Obstetrics & Gynecology for Cigna. *Id.*

69.     A similar denial letter directed to Dr. Hirsch, also dated December 21, 2017, restates the denial letter sent to Mr. Ahmed, again stating Cigna's decision that the "service . . . requested is not medically necessary" while noting that "Cigna's review was limited to medical necessity alone . . . ." and Cigna "has not reviewed your health benefits plan to determine coverage." Ex. D. The letter also states the reason for Cigna's decision, indicating that the request for "an augmentation of the mandible . . . is a cosmetic procedure without functional component, therefore cosmetic." *Id.*

70.     This letter also failed to address any of the provisions of the Policy as set forth in the Certificate of Coverage, nor did it address Dr. Hirsch's December 15, 2017 letter setting forth the bases of coverage under the Certificate of Coverage for the requested surgery. *Id.* As the denial letter stated, Cigna still "ha[d] . . . not reviewed [Mr. Ahmed's] . . . health benefits to determine coverage."

71.     Plaintiff's surgeon Dr. Hirsch has a dual degree (MD, DDS), and is a board-certified Oral and Maxillofacial Surgeon. He graduated with honors from New York University

College of Dentistry. Following Dental School, Dr. Hirsch went on to complete medical school at the top of his class and then completed a six-year Oral and Maxillofacial Surgery Residency at Bellevue/NYU. Dr. Hirsch also completed an internship in general surgery at NYU and concluded his training with a Head and Neck Surgical Oncology Fellowship in Portland, Oregon. He currently operates his own practice in addition to being the Chief of Division of Oral and Maxillofacial Surgery / General Surgery, Department of Otolaryngology, Head and Neck Surgery at Lenox Hill Hospital, a position he has occupied since prior to Mr. Ahmed's surgery.[4]

72.    On the other hand, Cigna's doctor responsible for denying Mr. Ahmed's request for preauthorization is a doctor of obstetrics and gynecology, an unrelated field.

73.    Dr. Thorne's letter requesting preauthorization for other components of the second surgery met a similar fate. His request for preauthorization, in a letter sent to Wellfleet Insurance on December 18, 2017, noted that the first surgery had resulted in deviation of the septum and a crooked nose for Mr. Ahmed, as well as deviation of the nasal tip, resulting in the obstruction of Mr. Ahmed's airway. *See* Ex. B.

74.    Cigna's denial letter directed to Dr. Thorne, dated January 8, 2018, contained much of the same language as the first two denial letters, noting in particular that "Cigna's review was limited to medical necessity alone . . . ." and Cigna "has not reviewed your health benefits plan to determine coverage" and again denied the surgery as not medically necessary. *See* Ex. E.

75.    Cigna's January 8, 2018 letter to Dr. Thorne denying the preauthorization request stated additional reasoning for the denial decision, including the following:

Rhinoplasty (plastic surgery performed on the nose) is considered medically necessary for either of the following reasons:

---

[4] https://www.manhattanmaxillofacial.com/meet-us/dr-david-hirsch/.

-correction or repair of a nasal deformity related to a cleft lip/palate or other severe congenital craniofacial deformity that is causing a functional impairment with both of the following:
-clear photos from the frontal, side, and from below the nose show the deformity
-the functional impairment is expected to be resolved by the rhinoplasty
-correction or repair of a nasal deformity related to trauma that is causing a functional impairment when all of the criteria are met:
-the nasal airway obstruction is poorly responsive to a recent 6-week trial of conservative treatment
-clear photos from the frontal, side, and from below the nose show the deformity
-the functional impairment is expected to be resolved by the rhinoplasty
-the condition has either not resolved after previous septoplasty/turbinectomy or would not be expected to resolve with a septoplasty/turbinectomy alone

*Id.* (emphasis added)

After review of the documentation received, medical necessity has not been established because of the following:
-no history is given of a nasal deformity because of trauma, a cleft lip/palate or other severe congenital craniofacial deformity that is causing a functional impairment
-there is no evidence that you have failed a recent trial of conservative treatment lasting at least 6 weeks
-no information is provided as to the degree or[sic] airway obstruction or functional impairment that would not respond or has not responded to septoplasty/turbinectomy
-the combination of CPT code 30450 - Local grafts from adjacent nasal bones and cartilage should not include CPT code 30520 (nasal septoplasty) as the CPT codes are not reported separately.

*Id.* This January 8, 2018 letter denying Dr. Thorne's preauthorization request for Mr. Azam's surgery is signed by David Neil Brown, M.D., Medical Director at Cigna. *Id.*

76.    Plaintiff's surgeon Dr. Thorne joined the plastic surgery faculty at NYU and opened his private practice in 1989; he then served as Chief of Plastic Surgery at the Bellevue Hospital for 10 years and as Program Director of the NYU Plastic Surgery Residency for 10 years. Dr. Thorne is currently the Chairman of the Department of Plastic Surgery at Lenox Hill Hospital and Manhattan Eye, Ear and Throat Hospital. Dr. Thorne has an international reputation for plastic surgery and certain specialized reconstructive surgeries. In addition to his clinical work, Dr. Hirsch

is professor at the Donald and Barbara Zucker School of Medicine at Hofstra/Northwell. He is also a member of the American Head and Neck Society, a fellow of the American College of Surgeons, and is board-certified in oral and maxillofacial surgery.[5] He has served as the Cosmetic Surgery Section editor for the Journal of Plastic and Reconstructive Plastic Surgery and is a member of numerous national and international societies in plastic surgery.[6]

77.    On the other hand, Cigna's Dr. Brown, who denied Dr. Thorne's request for preauthorization of this surgery, is a gastroenterologist, an unrelated field.

78.    Following the denial letters by Cigna, Mr. Ahmed spoke to representatives of NYU as well as representatives at Cigna, and Wellfleet Insurance about the denial decision and potential avenues for reconsideration or appeal rights but did not receive any substantial responses.

79.    On or around January 25, 2018, Dr. Hirsch, through his office, the Manhattan Maxillofacial Surgery, scheduled a peer-to-peer discussion on Plaintiff Ahmed's case, but Cigna maintained that the procedures for which Drs. Hirsch and Thorne sought preapproval were not medically necessary. No additional adverse benefit determination was issued in contravention of the terms and conditions of the Policy as set forth in the Certificate of Coverage.

80.    Mr. Ahmed continued to request an appeal of the decision throughout the next several months, and on July 12, 2018, was told by a representative of NYU's student health services department to seek an external review through the New York State Department of Financial Services ("NYDFS").

---

[5] https://www.northwell.edu/find-care/find-a-doctor/dental-medicine/dr-david-lawrence-hirsch-dds-md-11361328.
[6] https://www.manhattanmaxillofacial.com/meet-us/dr-david-hirsch/.

81. On or about July 22, 2018, Plaintiff Ahmed submitted an appeal request to the NYDFS. The external appeal officer for NYDFS told Mr. Ahmed that he needed to supply a final adverse determination letter that acknowledged his internal appeal rights.

82. Mr. Ahmed responded by informing the external appeal officer that the December 21 Letter (Exs. C and D) and the January 8 Letter (Ex. E) *were* the final adverse determination letters and contained the external appeal rights, and on August 3, 2018, the NYDFS officer informed Mr. Ahmed that Cigna stated no internal appeal was pursued by Mr. Ahmed and he would need to do that within the given time frame if he wanted external review.

83. Mr. Ahmed has an email from the Consolidated Health Plan[7] account manager informing him that the January 8, 2018 letter was his final adverse benefit determination letter. *See* Exhibit G. Although Mr. Ahmed communicated to the NYDFS officer that he was told by Wellfleet Insurance that the January 8, 2018 letter was the final adverse determination letter, she closed the file on August 20, 2018 and refused to engage in further proceedings with Mr. Ahmed.

84. This was an error by the NYDFS, as, in addition to being told by NYU to pursue external appeal and by the Policy's claims administrator that the January 8, 2018 letter was the final adverse determination letter necessary to seek external review, both denial letters state:

> **Please note: If we don't follow the rules for utilization review as defined in your plan, you may request an external review right away. You don't need to go through our internal process.**

85. Cigna flagrantly disregarded the Policy's procedure for utilization review as set forth in the Certificate of Coverage, as its preauthorization review was likely and is believed by Plaintiff based upon the circumstances to have been auto-adjudicated by its PXDX algorithm or

---

[7] Now operating as Defendant Wellfleet Insurance.

another automated procedure without ever being considered by an actual doctor, let alone one that was qualified in the field of medicine at issue. Alternatively, if the medical directors who signed the denial letters did actually review the files for medical necessity, they failed to do so in accordance with the procedures set forth in the Policy.

86.    More specifically, Cigna's preauthorization review failed to consider many required factors, principally Mr. Ahmed's actual medical records and the professional opinion of his surgeons, let alone the fact of the prior approved first surgery.

87.    Instead, Defendants relied upon—or purport to have relied upon—the opinion of an obstetrician-gynecologist and a gastroenterologist to determine that Mr. Ahmed's second follow-up surgery was not medically necessary. *See* ¶¶ 42-43; 55-64, *infra.*

88.    Further, Cigna was required to send an additional notice of adverse determination after the peer-to-peer review, when it decided to uphold its initial determination, but it failed to do so. These and other violations prejudiced Plaintiff and those similarly situated as they resulted in the improper denials of his surgery and caused him great harm as he was in a tremendous amount of pain and ultimately had to pay for the procedure out of pocket. As such, Mr. Ahmed was not required to utilize Cigna's internal appeal process and was within his rights to request an external review after the requests for coverage were denied.

### C.    ProPublica's Investigation Corroborates Defendants' Improper Denial of Coverage

89.    Mr. Ahmed's experience with Cigna is consistent with the scheme that ProPublica detailed in its March 2023 investigative report.

90.    Through ProPublica's investigation, it was revealed that Cigna utilizes a system that indiscriminately denies payments for claims, a practice which may lead to improper denials of coverage for medically necessary tests and procedures.

91.     As ProPublica reported:

[Cigna] The company has built a system that allows its doctors to instantly reject a claim on medical grounds without opening the patient file, leaving people with unexpected bills, according to corporate documents and interviews with former Cigna officials. Over a period of two months last year, Cigna doctors denied over 300,000 requests for payments using this method, spending an average of 1.2 seconds on each case, the documents show.

92.     Cigna's system is contrary to the many state insurance laws and regulations that require health insurers to "examine patient records, review coverage policies and use their expertise to decide whether to approve or deny claims[.]"

93.     According to ProPublica's investigation, Cigna fails to follow this process and instead relies on an algorithm called PXDX to make the determination, after which a Cigna-employed doctor signs off on the result.

94.     Accordingly, Cigna's "medical directors" issue denials without actually reviewing the patient's claim file, spending an average of 1.2 seconds on each case.

95.     The conduct detailed in ProPublica's investigation is strikingly similar to Mr. Ahmed's experience seeking coverage for medically necessary treatment.

96.     As described herein, Defendants denied coverage for Plaintiff's surgery in disregard of the information provided in the preauthorization request letters submitted by Drs. Hirsch and Thorne as if done so through an algorithm and not by an individual review of the information by a physician.

D.    **Defendants' Concerted Actions and Improper Denial of Coverage Were Unlawful and Violated Plaintiff's and Class Members' Contractual, Statutory, and Common Law Rights**

97.     Defendants' conduct as set forth herein is unlawful, egregious, and in bad faith. The conduct specifically includes, without limitation:

(a)     Misrepresenting how coverage for Covered Services pursuant to contract would be determined;

(b)     Misrepresenting what services would be determined to be Covered Services by the claims administrator or its agents;

(c)     Misleading Plaintiff in the Certificate of Insurance by concealing the fact that prior authorization reviews would ignore the Policy terms;

(d)     Improperly denying coverage and payment of expenses for Covered Services;

(e)     Misinterpreting the Policy terms and related policies and procedures;

(f)     Knowing and/or recklessly disregarding the lack of a reasonable basis for denying coverage and payment of Covered Services;

(g)     Using methods, policies, and/or procedures to make unreasonable medical necessity determinations;

(h)     Using methods, policies, and/or procedures, including the use of algorithms or formulas to deny coverage without proper physician oversight, for financial gain;

(i)     Failing to fully disclose and/or misrepresenting the coverage available to Plaintiff under the Policy; and

(j)     Misrepresenting the benefits, conditions, and terms of the Policy and limits and/or pertinent facts or policy or contract provisions relating to coverage of Covered Services at issue.

98.    Defendants' decision to deny coverage for Plaintiff's surgery was plainly made in disregard of detailed information provided in the preauthorization request letters submitted by Drs.

Hirsch and Thorne, and contrary to the information provided to Defendants when requesting pre-authorization.

99.    A fair and objective analysis of Plaintiff's diagnoses *and first surgery*, alongside the preauthorization requests for a second surgery, indicate that the surgery and treatment prescribed by Dr. Hirsch and Dr. Thorne was a Covered Service and payable under the policy. Defendants did not have a reasonable basis for claiming that Plaintiff's treatment was not covered under the Policy, particularly after finding that Mr. Ahmed's first surgery was properly allowed based on his diagnosis, and Defendants knew or should have known, or recklessly disregarded the lack of a reasonable basis.

100.    Defendants had an obligation to accept coverage for Plaintiff's Covered Services and owed Plaintiff the duty of good faith and fair dealing. This included conducting a prompt, thorough, objective, and timely investigation of whether Plaintiff's treatment qualified as a Covered Service under the Policy by reviewing the preauthorization request against *all* relevant information, including the Policy provisions set forth in the Certificate of Coverage and the rationale submitted by Mr. Ahmed's surgeons in their requests, as well as Mr. Ahmed's medical records.

101.    That the denials were determined by unqualified personnel was a violation of the duty of good faith and fair dealing.

102.    That the denials were determined without review of actual medical records was a violation of good faith and fair dealing.

103.    To the extent the denials were determined via the PXDX algorithm or another algorithm, that would be an additional violation of the duty of good faith and fair dealing.

104. Defendants' failure to provide proper due process and appeal rights was a violation of the duty of good faith and fair dealing.

105. At all relevant times, Defendants' actions were willful, wanton, reckless, and intentional, and were based upon and motivated by each Defendant's pursuit of monetary gain without regard for the resulting damage and injury and deprivation of insurance coverage due and owed to its insured. Defendants' coverage denials were performed with conscious disregard for the health and wellbeing of Plaintiff and demonstrate a reckless disregard and indifference to his rights and the rights of other members of the Class.

106. Defendants showed no concern for the safety of their insureds; indeed, they showed a willingness to deprive Mr. Ahmed of coverage for necessary medical care despite an acknowledgement that he was in severe pain based on what could only have been at best a cursory review of the requests and no review of the Policy coverage, and at worst—as suspected by Plaintiff—an automatic denial made via application of an algorithm. Rather, Defendants were only concerned about their own financial interests, thereby placing Plaintiff's health in extreme jeopardy.

107. Defendants' denials of medically necessary treatment to Plaintiff breached the terms of the Policy and breached the duty of good faith and fair dealing, specifically by ignoring evidence favorable to Plaintiff, misrepresenting the terms of the Policy, and failing to engage in a meaningful analysis regarding the denial of coverage, instead responding with one sentence denials, amongst other things.

108. As a result of the bad-faith denials and investigations, Plaintiff has suffered, and continues to suffer, damages, including, but not limited to, economic and non-economic damages. Plaintiff has unnecessarily incurred expenses and costs together with related economic losses,

physical injury, physical discomfort, and emotional distress, associated with Defendants' failure to honor the health insurance coverage duly purchased and paid for by Mr. Ahmed, and their denials of his treatment and refusal to pay for said treatment.

109.    As a proximate result of the unreasonable and bad-faith conduct of Defendants, Plaintiff has suffered, and will continue to suffer in the future, damages under the Policy and other economic and consequential damages, for a total amount to be proven at trial.

## **CLASS ACTION ALLEGATIONS**

110.    Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Classes and Subclass defined below pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

111.    Plaintiff seeks to certify the following Classes and Subclass:

> All persons in the United States whose preauthorization request for medical goods, services, treatment, or prescription drugs under a health insurance plan was denied by Cigna or a Cigna parent, affiliate, or subsidiary via an algorithm and/or unqualified medical professional from August 14, 2017 to the present (the "Cigna National Class").

> and

> All persons whose preauthorization request for medical goods, services, treatment, or prescription drugs under a health insurance plan issued in the State of New York was denied by Cigna or a Cigna parent, affiliate, or subsidiary via an algorithm and/or an unqualified medical professional from August 14, 2017 to the present (the "Cigna New York Class").

> And

> Any participant, beneficiary, or assignee of a health insurance policy issued by Wellfleet NYIC and administered by Wellfleet Insurance using Cigna to conduct utilization review whose preauthorization request for medical goods, services, treatment, or prescription drugs under a health insurance plan was denied by Cigna or a Cigna parent, affiliate, or subsidiary via an

30

algorithm and/or an unqualified medical professional from August 14, 2017 to the present (the "Wellfleet Subclass").

112.    The Cigna New York Class and Wellfleet Subclass are collectively referred to herein as the "Class."

113.    Excluded from the Class are: (a) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assignees, and successors; and (b) the Judge to whom this case is assigned, any mediator to whom this case is assigned, and their respective staffs.

114.    Plaintiff reserves the right to amend the Class definitions following discovery and further investigation.

115.    **Numerosity**: Although the exact number of Class members is currently uncertain, it can be easily ascertained through fact discovery from Defendants, and the number is significant enough such that joinder is impracticable. Each Class numbers in the thousands. The disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and the Court. The Class members are readily identifiable from information and records in Defendants' possession, custody, or control.

116.    **Commonality and Predominance**: There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting Class members individually. These common legal and factual issues include, without limitation, the following:

(a)    Whether Defendants have improperly denied preauthorization of medically necessary health services requests using improper policies, procedures, or practices;

(b)    Whether Defendants have systematically denied preauthorization of medically necessary health services requests;

31

(c)     Whether Defendants made affirmative misrepresentations concerning the methods, policies, and/or procedures for reviewing preauthorization requests;

(d)     Whether Defendants made material omissions concerning the methods, policies, and/or procedures for reviewing preauthorization requests;

(e)     Whether Defendant Cigna's delegation of review of claims for medical necessity to the PXDX algorithm or any algorithm or formula resulted in the failure of Cigna to conduct the thorough, full, and objective review that it was required to perform by law;

(f)     Whether Cigna automatically denied payment for claims submitted by certain insureds and/or healthcare providers without having a medical director with proper experience and qualifications examine patient records, review coverage policies, and use their expertise to decide whether to approve or deny claims, but instead simply rubber-stamped the automatic denials or denials made by personnel who lacked the proper experience and/or qualifications;

(g)     Whether Defendants breached the provisions of the insurance policies at issue;

(h)     Whether Plaintiff and Class members are entitled to equitable relief, including, but not limited to, the reconsideration of their preauthorization requests by a qualified medical professional to properly decide their preauthorization requests. When Medicare Advantage preauthorization denials were challenged, 80% of them were overturned (*supra* at ¶ 11),

which indicates the vast majority of preauthorization requests made to Cigna were improperly denied;

(i)     Whether Plaintiff and Class members are entitled to additional equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

(j)     Whether Defendants are liable for breach of contract;

(k)     Whether Defendants are liable for fraudulent omission; and

(l)     Whether Defendants were unjustly enriched.

117.    **Typicality**: Plaintiffs' claims are typical of the claims of the Class in that Plaintiff, like all Class members, sought preauthorization of medical goods, services, treatment, or prescription drugs under a health insurance plan that was improperly denied by Defendants through the use of an algorithm and/or unqualified medical professionals. Plaintiff, like all Class Members, was damaged by Defendants' misconduct because his claim was improperly denied, and because he incurred out-of-pocket costs associated with his treatment. Furthermore, the factual bases of Defendants' misconduct are common to all Class members and represent a common thread resulting in injury to the Class.

118.    **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer class actions and class actions based on fraudulent conduct, and Plaintiff will vigorously prosecute this action.

119.    **Injunctive Relief**: The Class meets the requirements for certification to obtain injunctive or equitable relief under Fed. R. Civ. P. 23(b)(2), as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or

equitable relief with respect to the Class as a whole. Every preauthorization that was decided via algorithm or inappropriate medical personnel must be reconsidered. Prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants.

120.    **Predominance and Superiority**: Common issues predominate in this class action over any individual issues. Plaintiff and Class members have all suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class members will continue to incur damages, and Defendants' misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## CAUSES OF ACTION

### COUNT I

**Breach of Contract**
**Against Defendant Wellfleet NYIC and Wellfleet Insurance**
**(On behalf of the Wellfleet Subclass)**

121.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

122. Plaintiff brings this count on behalf of himself and the Wellfleet Subclass against Defendants Wellfleet NYIC and Wellfleet Insurance (together, the "Wellfleet Defendants").

123. The Policy constitutes a contract whereby Plaintiff and Class members agree to pay premiums, deductibles, and co-payments, on one hand, and the Wellfleet Defendants agree to provide health insurance benefits pursuant to the terms of the Policy.

124. Plaintiff and members of the Wellfleet Subclass satisfied and performed their obligations under the Policy, including but not limited to all conditions precedent and all conditions subsequent.

125. The Wellfleet Defendants unjustifiably breached the Policy by failing to honor Plaintiff's claim for benefits under the Policy and denying coverage under the Policy.

126. The conduct of the Wellfleet Defendants described herein constitutes a breach of contract.

127. Each contract in New York, such the Policy, imposes an obligation of good faith and fair dealing on the parties to the contract. This implied covenant of good faith and fair dealing ensures that the parties' reasonable expectations are fulfilled and that a party does not engage in conduct that undermines the purpose and terms of the contract even if that conduct is not expressly prohibited by the terms of the contract.

128. The Wellfleet Defendants' conduct in permitting medical necessity reviews to be performed that did not comply with the terms of the Policy and that were conducted by a computer program and/or by unqualified "medical directors" without subject matter expertise or who did not in fact review the files or policy when making a medical necessity determination, also constitutes a breach of the Policy's implied covenant of good faith and fair dealing.

129.    Plaintiff and members of the Wellfleet Subclass were damaged by Defendants' breach of the Policy in that their out-of-pocket costs increased, and they were not reimbursed for medically necessary treatment and services.

130.    As a consequence of Defendants' breach of contract, Defendants are liable to Plaintiff for actual and consequential damages in an amount to be determined at trial.

### COUNT II

**Violation of New York Insurance Law § 4226(a)(1)**
**Against Defendant Wellfleet NYIC and Wellfleet Insurance**
**(On behalf of the Wellfleet Subclass)**

131.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

132.    Plaintiff brings this count on behalf of himself and the Class and Subclass against Defendants Wellfleet NYIC and Wellfleet Insurance (together, the "Wellfleet Defendants").

133.    New York Insurance Law § 4226(a)(1) prohibits insurers from "issu[ing] or circulat[ing], or caus[ing] or permit[ting] to be issued or circulated on its behalf, any illustration, circular, statement or memorandum misrepresenting the terms, benefits or advantages of any of its policies or contracts."

134.    The Wellfleet Defendants misrepresented the terms of the Policy by concealing and failing to disclose to Plaintiff and members of the Class of their intention to deny coverage of medically necessary services and procedures in contravention of the Policy.

135.    The Wellfleet Defendants made representations that medically necessary services and procedures would be covered under the Policy but knew that they, in fact, intended to deny coverage of medically necessary procedures through a system whereby denials of medical necessity would be issued based upon computer software such as the PXDX system and/or

"medical directors" who were not qualified to render opinions of medical necessity and/or failed to materially review Class members' files.

136.    Plaintiff and members of the Class relied upon the representations of the Wellfleet Defendants that medically necessary services and procedures would be covered under the Policy.

137.    Because of these misrepresentations, Plaintiff and members of the Classes were induced to purchase the Policy and continue to pay premiums towards the Policy.

138.    The Wellfleet Defendants' misrepresentations are material and significant and injured Plaintiff and members of the Classes. Had the Wellfleet Defendants complied with New York Insurance Law § 4226, policyholders, including Plaintiff, would not have paid the same amount for the Policy, if they would have purchased them at all.

139.    Plaintiff did not and could not have discovered through the exercise of reasonable diligence that he was injured by the false representations made by the Wellfleet Defendants in violation of New York Insurance Law § 4226, much less how that injury was caused. The Wellfleet Defendants' conduct as alleged herein constitutes a continuing violation of New York Insurance Law § 4226.

140.    The Wellfleet Defendants knowingly violated New York Insurance Law § 4226 and knowingly received premiums and other compensation in consequence of such violation.

141.    Plaintiff and members of the Class paid premiums for health insurance policies sold by an insurer authorized by the State of New York that nonetheless failed to comply with New York law governing representations made by such an authorized insurer. Plaintiffs, therefore, are persons aggrieved under the statute as a result of the Wellfleet Defendants' misrepresentations.

142.    As a result of these knowing misrepresentations, in addition to any other penalty the Court may impose, Plaintiff and the Class are entitled pursuant to New York Insurance Law §

4226(d) to recover all premiums paid or compensation that the Wellfleet Defendants received as a consequence of its misrepresentations.

## COUNT III

### Fraud against all Defendants
### (On behalf of all Classes)

143.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

144.    Plaintiff brings this count on behalf of himself and the Classes and Subclass against Defendants.

145.    Defendants knew they intended to deny coverage of medically necessary procedures in contravention of the Policy. Defendants instituted a system whereby denials of medical necessity would be issued by the PXDX system and/or "medical directors" who were not qualified to render opinions of medical necessity and/or failed to actually review Class members' files.

146.    Defendants concealed and failed to disclose to Plaintiff and members of the Class of their intention to deny coverage of medically necessary services and procedures in contravention of the Policy.

147.    Defendants were under a duty to Plaintiff and Class members to disclose this information because:

    (a)    Defendants were in a superior position to know how the Policy was implemented for evaluating whether and how medically necessary services would constitute a covered service under the Policy;

    (b)    The omitted information was material because it directly impacted the availability and expense of medically necessary services and procedures;

(c)    Defendants knew the omitted information was not known to or reasonably discoverable by Plaintiff and Class members;

(d)    Defendants made partial disclosures about the coverage of medically necessary services and treatments without revealing the true intention to deny coverage of such; and;

(e)    Defendants actively concealed their intention to deny coverage of medically necessary services and procedures in contravention of the insurance contracts at issue.

148.    The information concealed and not disclosed by Defendants to Plaintiff and Class members is material in that a reasonable person would have considered this information to be important in obtaining health insurance benefits. Had Plaintiff and Class members known of Defendants' intention to systematically deny coverage of medically necessary services and procedures in contravention of their insurance contracts, they would have sought health insurance benefits elsewhere.

149.    Defendants concealed or failed to disclose the true nature of their intention to deny coverage of medically necessary services and procedures in contravention of the insurance contracts at issue to induce Plaintiff and Class members to act thereon. Plaintiff and Class members justifiably relied on Defendants' omissions to their detriment.

150.    Defendants continued to conceal their intention to deny coverage of medically necessary services and procedures in contravention of the insurance contracts at issue even after Class members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

151.    As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members have suffered and will continue to suffer actual damages.

152.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, in an amount to be proven at trial.

### COUNT IV

### Unjust Enrichment
### Against Defendant Cigna
### (On behalf of the Cigna National Class and Cigna New York Class)

153.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

154.    Plaintiff brings this count on behalf of himself and the Cigna National Class and Cigna New York Class against Defendant Cigna.

155.    Defendant Cigna has received and retained a benefit from Plaintiff and the Class members, and inequity has resulted. In particular, Cigna is contracted by the insurance companies which provide health plan coverage to Plaintiff and Class members to perform reviews of medical necessity. The money Cigna receives to fulfill those contracts comes from the premiums paid by Plaintiff and Class members. Indeed, it is a cost recorded by the insurance company as a cost of administering the health insurance plans and is a factor in the premium price charged to Plaintiff and Class members by their insurance companies which provide their health insurance plans.

156.    As a direct and proximate result of Cigna's conduct as set forth in this Complaint, Defendant Cigna has profited through receipt and retention of a portion of the monthly premium payments paid by Plaintiff and Class members.

157.    Defendant Cigna has been unjustly enriched due to its receipt and retention of these partial premium payments while intentionally and systematically denying coverage of medically necessary services and procedures in contravention of the insurance contracts under which Plaintiff and Class members were due benefits.

158.    Plaintiff and Class members were not aware of the true facts regarding Cigna's intention to deny coverage of medically necessary services and procedures in contravention of the insurance contracts under which they were covered and did not benefit from Defendants' unjust conduct.

159.    As a result of Cigna's unjust enrichment, Plaintiff and Class members have suffered damages.

160.    Plaintiff does not seek restitution under their unjust enrichment claim. Rather, Plaintiff and Class members seek non-restitutionary disgorgement of all financial profits that Defendants obtained as a result of the unjust conduct alleged herein.

161.    Additionally, Plaintiff seeks injunctive relief enjoining Defendants from denying coverage of medically necessary services and procedures in contravention of the insurance contracts at issue.

162.    Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Cigna National Class, Cigna New York Class, and Wellfleet Subclass as defined above, respectfully requests that the Court enter judgment against Defendants and award the following relief:

A.    An order certifying the proposed Classes and Subclass, designating Plaintiff as the

Class Representative, and designating the undersigned as Class Counsel;

B.    An Order declaring that Defendants are financially responsible for notifying members of the Classes and Subclass of the pendency of this action;

C.    An Order declaring that the conduct alleged herein be unlawful;

D.    An Order declaring that Defendants have committed the violations of law alleged herein;

E.    An Order enjoining Defendants from continuing the unlawful activities alleged herein;

F.    An Order providing for any and all requested injunctive relief and/or injunctive relief that the Court deems appropriate, including, but not limited to, reconsideration of every preauthorization request that was improperly denied via an algorithm or inappropriate medical personnel;

G.    An Order awarding monetary damages, including, but not limited to, any compensatory, incidental, and consequential damages in an amount to be determined by the Court or jury;

H.    A declaration that Defendant Cigna must disgorge, for the benefit of the Cigna Class, all or part of the ill-gotten profits it received from the improper denial of medically necessary claims, and/or make full restitution to Plaintiff and Class members;

I.    An award of pre-judgment and post-judgment interest, as provided by law;

J.    An award of attorneys' fees' and expenses to Class Counsel; and

K.    All such other relief as may be appropriate under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of any and all issues in this action so triable.


Dated: September 13, 2023                    Respectfully submitted,


                                             /s/ William A. Walsh
                                             William A. Walsh
                                             Abigail J. Gertner (*pro hac vice* to be sought)
                                             Natalie Lesser (*pro hac vice* to be sought)
                                             BERGER MONTAGUE PC
                                             1818 Market Street, Suite 3600 Philadelphia, PA
                                             Tel. (215) 875-3000
                                             Fax (215) 875-4604
                                             wwalsh@bm.net
                                             agertner@bm.net
                                             nlesser@bm.net


                                             Karen L. Handorf (*pro hac vice* to be sought)
                                             Julie S. Selesnick (*pro hac vice* to be sought)
                                             BERGER MONTAGUE PC
                                             2001 Pennsylvania Ave., NW
                                             Suite 300
                                             Washington, D.C. 20006
                                             Tel. (202) 559-9740
                                             Fax (215) 875-4604
                                             khandorf@bm.net
                                             jselesnick@bm.net

                                             *Counsel for Plaintiffs*