**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AZAM AHMED, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA HEALTH MANAGEMENT, INC., THE CIGNA GROUP, WELLFLEET INSURANCE, and WELLFLEET NEW YORK INSURANCE COMPANY,<br><br>Defendants. | Case No. 1:23-cv-08094-AS<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF CIGNA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................ 1

FACTUAL BACKGROUND ........................................................ 3

ARGUMENT ........................................................ 5

I. Plaintiff's Fraud and Unjust Enrichment Claims Against Cigna Should Be Dismissed. ........................................................ 6

A. The Fraud Claim (Count III) Should Be Dismissed. ........................................................ 6

1. Plaintiff Has Not Shown that Cigna Had a Duty to Disclose. ........................................................ 6

2. Plaintiff Has Not Satisfied Rule 9(b). ........................................................ 8

II. The Unjust Enrichment Claim (Count IV) Should Be Dismissed. ........................................................ 12

III. The Court Should Strike Plaintiff's Class Allegations. ........................................................ 14

CONCLUSION ........................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005)....................6, 7

*Apex Mar. Co. v. OHM Enters., Inc.*,
2011 WL 1226377 (S.D.N.Y. Mar. 31, 2011)....................10

*Bank v. CreditGuard of Am.*,
2019 WL 1316966 (E.D.N.Y. Mar. 22, 2019)....................15, 16

*Borgese v. Baby Brezza Enters. LLC*,
2021 WL 634722 (S.D.N.Y. Feb. 18, 2021)....................15

*Chartwell RX, LLC v. Inmar, Inc.*,
620 F. Supp. 3d 59 (S.D.N.Y. 2022)....................7

*Dupere v. Ethicon, Inc.*,
2022 WL 523604 (S.D.N.Y. Feb. 22, 2022)....................12

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)....................11, 12

*First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*,
52 F. Supp. 3d 625 (S.D.N.Y. 2014)....................7, 8

*Hudson Neurosurgery, PLLC v. UMR, Inc.*,
2023 WL 6311218 (S.D.N.Y. Sept. 28, 2023)....................13, 14

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)....................6, 11

*Lewis v. Casey*,
518 U.S. 343 (1996)....................16

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012)....................15

*McCabe v. CVS Health Corp.*,
2023 WL 6385729 (E.D.N.Y. Sept. 29, 2023)....................7

*Meda AB v. 3M Co.*,
969 F. Supp. 2d 360 (S.D.N.Y. 2013)....................8

*Merkin v. Berman*,
123 A.D.3d 523 (1st Dep't 2014) ....................6

*Miller v. Syracuse Univ.*,
662 F. Supp. 3d 338 (N.D.N.Y. 2023) ....................17

*Passiglia v. Northwell Health, Inc.*,
252 F. Supp. 3d 129 (E.D.N.Y. 2017) ....................11

*In re Platinum-Beechwood Litig.*,
427 F. Supp. 3d 395 (S.D.N.Y. 2019)....................6, 8, 9

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
68 F.3d 1478 (2d Cir. 1995)....................7

*Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*,
192 F. Supp. 3d 348 (S.D.N.Y. 2016)....................12

*S.M. v. Oxford Health Plans (N.Y.), Inc.*,
94 F. Supp. 3d 481 (S.D.N.Y. 2015),*aff'd sub nom.S.M. v. Oxford Health Plans (N.Y.)*,
644 F. App'x 81 (2d Cir. 2016) ....................11

*Spinelli v. NFL*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015)....................12, 13

*Stanley v. Direct Energy Servs.*,
LLC, 466 F. Supp. 3d 415 (S.D.N.Y. 2020) ....................13

*Talarico v. Port Auth. of N.Y. and N.J.*,
367 F. Supp. 3d 161 (S.D.N.Y. 2019)....................15

**Other Authorities**

Fed. R. Civ. P. 8 ....................11

Fed. R. Civ. P. 9(b) .................... *passim*

Fed. R. Civ. P. 12 ....................2

Fed. R. Civ. P. 23 ....................16

Fed. R. Civ. P. 23(b)(2)....................17

# INTRODUCTION[1]

This case is a run-of-the-mill coverage dispute between an insured individual and his former insurance policy. A former policyholder of Wellfleet's health insurance, Plaintiff Azam Ahmed filed this lawsuit after two medical directors for Cigna (who conducted medical necessity reviews for Wellfleet) reviewed his request to pre-authorize three procedures, concluded that they were not medically necessary, and denied his pre-authorization requests accordingly.

Instead of litigating this dispute individually, however, Plaintiff wants to turn it into a sprawling class action. He filed his complaint on the heels of a ProPublica article that reported on Cigna's use of Procedure-to-Diagnosis ("PxDx")—a claims review process used to check that the service a member received is covered by their plan. (*See* ECF No. 1 ¶¶ 10-17.) Relying on that ProPublica article, Plaintiff argued that Cigna must have used PxDx to deny his pre-authorization request for surgery, and he sought to represent a nationwide class of members with such alleged denials going back to 2017. (*Id.* ¶¶ 12, 111.)

Plaintiff never had a basis for these allegations. Even in the original complaint, he alleged that two human Cigna doctors (not some algorithm) reviewed his pre-authorization requests and even had a live peer-to-peer conversation with his doctor. (*Id.* ¶¶ 61-79.) At Plaintiff's request, Cigna also provided him with "a declaration that [his claims] were ***not*** subject to PxDx review." (ECF No. 39 at 1.) Plaintiff then filed the FAC, in which he now admits that his "claims were not subject to the PxDx algorithm[.]" (FAC ¶ 93.) Yet he still tries to pursue a case theory based on Cigna's alleged use of "computer programs, AI, algorithms or formulas" in an attempt to stitch

[1] Unless otherwise noted, all emphasis has been added, and all citations, alterations, and internal quotation marks have been omitted. "Cigna" refers collectively to Cigna Health Management, Inc. and The Cigna Group, and "Wellfleet" refers collectively to Wellfleet Insurance and Wellfleet New York Insurance Company. "FAC" refers to the First Amended Complaint, ECF No. 43.

together a putative class. (*See, e.g.*, *id.* ¶ 12.) The FAC does not pass Rule 12 muster against Cigna on either an individual or class basis.

Plaintiff's core contention is that Cigna's medical directors got it wrong when they denied pre-authorization for his surgeries. He brings only two claims against Cigna—fraud (Count III) and unjust enrichment (Count IV). Both should be dismissed. Plaintiff's fraud claim is not premised on any actual misrepresentations by Cigna (he alleges none), but on an alleged omission—that Cigna should have told him of its alleged "intention to deny coverage" of his requested surgeries "in contravention of the Policy." (*Id.* ¶ 144.) This claim fails for multiple reasons: denying coverage for a claim is not fraud; this fraud-by-omission claim requires a duty to disclose, but Plaintiff does not plead any basis for such duty; and an alleged "intention" to deny coverage in the future is not a ***fact*** as required to state a fraud claim. But even setting all of that aside, Plaintiff has not pled any of the specifics of this alleged omission that Rule 9(b) requires or that he actually relied on any such omissions—not surprising, since he does not say that Cigna had represented anything to him at all before he signed up for his Wellfleet insurance policy.

Plaintiff's unjust enrichment claim fares no better. Because Plaintiff premises this claim on allegedly fraudulent conduct, it is also subject to Rule 9(b)—which Plaintiff again does not satisfy. The FAC also repeatedly acknowledges that Plaintiff's rights to medical coverage are governed by a written contract (his benefit plan), which leaves no room for quasi-contract claims like unjust enrichment. Finally, Plaintiff does not allege that Cigna received either a specific or direct benefit, both of which are elements of an unjust enrichment claim. Instead, he only speculates that Cigna may have received some unidentified portion of the insurance premiums that he paid to ***Wellfleet***, not Cigna. For any of these multiple reasons, both the fraud and the unjust enrichment claims should be dismissed.

In addition to moving to dismiss these claims, Cigna also moves to strikes Plaintiff's class allegations. Plaintiff's proposed class is on its face uncertifiable, including because he seeks to litigate class claims for which he himself has no standing—like, for example, claims based on his pre-authorization requests being reviewed "via computer program, AI, algorithm, or formula" (since Plaintiff admits that his claims "were not subject" to such review), or his request for a classwide injunction, given that he has not been enrolled with his Wellfleet policy since 2018 and thus cannot show the imminent risk of harm that an injunction requires.

For these reasons, and additional reasons below, the Court should dismiss both of Plaintiff's claims against Cigna and strike Plaintiff's class allegations from the FAC.

## FACTUAL BACKGROUND[2]

Plaintiff was covered by a health insurance policy issued by Wellfleet from August 2016 through August 2018. (FAC ¶¶ 45-46.) Plaintiff challenges the way that Cigna's medical directors—who conducted medical necessity reviews for Wellfleet—reviewed his requests to pre-authorize three surgical procedures (jaw augmentation, septoplasty, and rhinoplasty). (*Id.* ¶¶ 5-8.)

Cigna denied all three requests after concluding that the surgeries were not medically necessary. (*Id.*) The first letter (dated December 21, 2017, by Dr. Steven Mintz) explained that Plaintiff's request for "augmentation of the mandible" was determined to be "a cosmetic procedure without functional component, therefore cosmetic" and thus not medically necessary, referencing Cigna's "Medical Coverage Policy [for] Orthognathic Surgery 0209." (FAC Ex. D, ECF No. 43-4 at 2.)

[2] Given the procedural posture, Cigna treats Plaintiff's allegations in the FAC as true for purposes of this motion.

The second letter (dated January 8, 2018, by Dr. David Brown) denied Plaintiff's request to authorize the remaining procedures. In the letter, Dr. Brown explained the circumstances in which "rhinoplasty . . . is considered medically necessary." (FAC Ex. E, ECF No. 43-5 at 2.) He also explained that from his "review of the documentation received, medical necessity has not been established" for multiple reasons—including that "no history is given of a nasal deformity because of trauma, a cleft lip/palate or other severe congenital craniofacial deformity that is causing a functional impairment"; "there is no evidence that [Ahmed had] failed a recent trial of conservative treatment lasting at least 6 weeks"; and "no information is provided as to the degree [of] airway obstruction or functional impairment that would not respond or has not responded to septoplasty/turbinectomy." (*Id*. at 2; *see also id.* (referencing Cigna's "Medical Coverage Policy 0119 Rhinoplasty, Vestibular Stenosis Repair and Septoplasty").)

Both letters also told Plaintiff that "your health care professional can call Cigna at the telephone number in the footer below to discuss this decision with a physician reviewer," and that "if you are still not satisfied, you can appeal our decision through the Appeal process." (FAC Ex. D, ECF No. 43-4 at 2 & Ex. E, ECF No. 43-5 at 3.) Plaintiff took advantage of this opportunity: on January 25, 2018, Dr. David Hirsch, one of Plaintiff's physicians, "conducted a peer-to-peer review with a Cigna physician" to discuss the denials. (FAC ¶ 44.) That call did not change Cigna's conclusion that the requested surgeries were not medically necessary. (*Id.*)

Plaintiff now alleges that these denials are "an improper and illegal scheme to defraud Plaintiff and the Class[.]" (*Id.* ¶ 12.) Specifically, he alleges that Cigna adopted three kinds of improper "corporate policies and/or practices" to deny covered claims, but not one of those theories is supported by well-pled facts. First, Plaintiff challenges Cigna's alleged "improper use of so-called 'medical directors' or other staff who are not qualified to render opinions of medical

necessity because of their lack of subject-matter expertise." But Plaintiff's policy does not entitle him to have his pre-authorization request reviewed by a doctor in the same specialty as Plaintiff's surgeons. Instead, it says that "All determinations that services are not Medically Necessary will be made by: 1) licensed Physicians; ***or*** 2) licensed, certified, registered or credentialed Health Care Professionals who are in the same profession and same or similar specialty as the Provider who typically manages Your medical condition or disease or provides the health care service under review." (FAC Ex. F, ECF No. 43-6 at 61.) Plaintiff's policy thus allows using any "licensed Physicians" (regardless of their specialty) to make pre-authorization determinations, and he does not allege that either Dr. Mintz or Dr. Brown failed to meet this requirement.

Second, Plaintiff accuses Cigna's medical directors of "failing to properly review Class members' actual files, all in derogation of their duties of good faith and fair dealing in determining coverage." (*Id.* ¶ 12(b).) He does not explain why any alleged failure to "properly review" his pre-authorization requests would amount to fraud, however.

Third, Plaintiff challenges Cigna's alleged "use of computer programs, AI, algorithms or formulas to make coverage determinations." (*Id.* ¶ 12(c).) But he admits that his "claims were not subject to the PxDx algorithm," as Cigna already told him in a sworn declaration. (*Id.* ¶ 93.) And he does not plead any facts to show that Cigna used any other "algorithms or formulas" to review his claims. To the contrary, Plaintiff's own allegations show that two human Cigna doctors—Dr. Mintz and Dr. Brown—made his pre-authorization decisions. (*See id.* ¶¶ 40-44.)

## ARGUMENT

For the reasons below, both of Plaintiff's claims against Cigna should be dismissed.

## I. Plaintiff's Fraud and Unjust Enrichment Claims Against Cigna Should Be Dismissed.

### A. The Fraud Claim (Count III) Should Be Dismissed.

Plaintiff alleges that "Cigna created, developed, managed, and administered a scheme to fraudulently deny insurance coverage for medically necessary services and procedures[.]" (*Id.* ¶ 15.) He does not allege that Cigna made any affirmative misrepresentations to him. He instead relies on a fraud-by-omission theory, contending that "Defendants concealed and failed to disclose to Plaintiff and members of the Class of their intention to deny coverage of medically necessary services and procedures in contravention of the Policy." (*Id.* ¶ 144.) This fraudulent-concealment theory "must pass muster under Rule 9(b)." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005). It does not, and this claim should be dismissed for the reasons below.

#### 1. Plaintiff Has Not Shown that Cigna Had a Duty to Disclose.

To plead fraud by omission, Plaintiff must show (among other things) that Cigna had "an affirmative duty to disclose [the allegedly omitted] information to [him][.]" *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 440-41 (S.D.N.Y. 2019). Plaintiff tries to meet this requirement through the "special facts" doctrine, where a duty to disclose may arise "where [1] one party possesses superior knowledge, not readily available to the other, and [2] knows that the other is acting on the basis of mistaken knowledge." *Aetna*, 404 F.3d at 582; *see* FAC ¶¶ 145(a) (alleging that "Defendants were in a superior position to know how the Policy was implemented[.]"). This doctrine does not help Plaintiff, for three separate reasons.

First, "the special facts doctrine . . . applies only in 'business dealings' between parties to a prospective transaction." *Merkin v. Berman*, 123 A.D.3d 523, 524 (1st Dep't 2014); *accord Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (the doctrine typically only applies "during the course of negotiations surrounding a business transaction . . . "); *see also id.* ("As several district courts have suggested, such a duty usually arises in the context of business

negotiations where parties are entering a contract") (collecting cases, cleaned up); *Chartwell RX, LLC v. Inmar, Inc.*, 620 F. Supp. 3d 59, 72 (S.D.N.Y. 2022) (similar, citing *Merkin*). Plaintiff does not allege any such business negotiations here, and the doctrine does not apply for that reason alone.

Second, even if this doctrine applied, Plaintiff has not plausibly alleged that Cigna knew some special facts to trigger it. Instead, he alleges that Cigna "failed to disclose . . . [its] ***intention*** to deny coverage[.]" (FAC ¶ 144; *see also id.* ¶¶ 145-48 (more "intention" allegations).) "But knowledge of intention is not knowledge of *facts*, and certainly not the kind of facts required under the special facts doctrine." *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 639 (S.D.N.Y. 2014) (emphasis in original).

Third, even if the special-facts doctrine applied in this pre-authorization context (it does not), and even if Plaintiff had pled that Cigna knew some special facts (he did not), Plaintiff also has not alleged that Cigna "kn[ew] that [he] is acting on the basis of mistaken knowledge"—another required element of the doctrine. *See Aetna*, 404 F.3d at 582; *see also Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995) ("a disclosure duty ripens only when it becomes apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact"). The FAC does not allege that Plaintiff even had any communications with Cigna before he signed up for his Wellfleet-issued insurance policy, so there is no plausible basis to infer that Cigna knew anything about the basis for Plaintiff's actions. That is another reason to dismiss. *See McCabe v. CVS Health Corp.*, 2023 WL 6385729, at *4 (E.D.N.Y. Sept. 29, 2023) (dismissing where the complaint "sets out no facts suggesting that CVS knew that [plaintiff], or other customers, were acting on the basis of mistaken knowledge[.]").

Finally, a duty to disclose may also arise "where the parties are in a fiduciary relationship," or "where a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure." *Aetna*, 404 F.3d at 582. Neither of these apply here. Plaintiff does not allege (and he cannot) that Cigna owed him fiduciary duties. And while he makes the boilerplate assertion that "Defendants made partial disclosures about the coverage of medically necessary services and treatments without revealing the true intention to deny coverage of such" (FAC ¶ 145(d)), this is not supported by any well-pled facts. Thus, those bald assertions aside, Plaintiff does not plausibly "allege that [Cigna] made *any* statements, much less partial or ambiguous ones," so "this avenue is also foreclosed." *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 638 (S.D.N.Y. 2014) (emphasis in original).

**2. Plaintiff Has Not Satisfied Rule 9(b).**

Plaintiff's lack of showing that Cigna had a duty to disclose is dispositive of his fraud claim. But even setting that aside, he has also failed to plead this claim under Rule 9(b).

Pleading fraud requires: "(1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff." *Meda AB v. 3M Co.*, 969 F. Supp. 2d 360, 385 (S.D.N.Y. 2013). To plausibly plead an omission, Plaintiff must also allege "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d at 440. Plaintiff does not meet these requirements.

***No Material Misrepresentation or Omission of Fact.*** Plaintiff's claim falls apart at the first element because he does not plead any of the specifics required to plausibly allege any "omission of fact," starting with the fact that the information that he says Cigna supposedly

withheld—its alleged "intention to deny coverage of medically necessary services" (FAC ¶ 144)—is not even a material fact. *See First Hill Partners, LLC*, 52 F. Supp. 3d at 638 ("knowledge of intention is not knowledge of *facts*[.]") (emphasis in original). Plaintiff also does not identify "the person responsible for the failure to disclose," "the context of the omissions," or what Cigna supposedly "obtained through the fraud"—all of which are necessary to plead an omission. *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d at 440; FAC ¶¶ 141-50.

To support his fraud claim, Plaintiff also alleges that "Defendants instituted a system whereby improper policies and procedures would be employed to determine medical necessity, including, without limitation, incomplete review of the claims file and medical records, review conducted by professionals not qualified to render an appropriate judgment, or review conducted via computer program, AI, algorithm, or formula." (FAC ¶ 143.) His "improper policies and procedures" theory does not plead any fraud either, since Plaintiff does not even allege (much less do so consistent with Rule 9(b)) that Cigna had promised to review his pre-authorization request through any particular set of policies and procedures.

To the extent Plaintiff argues that he was entitled to have his pre-authorization request reviewed by doctors with the same "subject-matter expertise" as his surgeons (*see id.* ¶ 12), his insurance policy unambiguously says otherwise. (*See* FAC Ex. F, ECF No. 43-6 at 61 ("All determinations that services are not Medically Necessary will be made by: 1) licensed Physicians; ***or*** 2) licensed, certified, registered or credentialed Health Care Professionals who are in the same profession and same or similar specialty as the Provider who typically manages Your medical condition or disease or provides the health care service under review"); *see also id.* (medical necessity review includes activities that "take place prior to the service being performed (Preauthorization)").) As Plaintiff acknowledges, his requests for pre-authorization were in fact

reviewed by Cigna medical directors-physicians (FAC ¶¶ 40-44)—which means that he received exactly what his policy promised. And even if he had not, Plaintiff never explains why that would amount to fraud. In fact, Cigna was not the entity who issued Plaintiff's insurance policy, so whatever the policy might have said about who would conduct medical necessity reviews, Plaintiff has no allegations to show how Cigna could possibly be liable for anything that the policy allegedly misrepresented or omitted. *See Apex Mar. Co. v. OHM Enters., Inc.*, 2011 WL 1226377, at *3 (S.D.N.Y. Mar. 31, 2011) (fraud allegations did not satisfy Rule 9(b) where the complaint did not "separately set forth the fraudulent acts perpetrated by" specific defendants).

Plaintiff's remaining two fraud theories—"failing to properly review Class members' actual files," and "the use of computer programs, AI, algorithms or formulas to make coverage determinations" (*id.* ¶ 12)—fare no better. As to the first, Plaintiff never explains how Cigna's alleged failure to "properly review [his] file[]" could somehow amount to fraud. And regardless, Plaintiff's own allegations and exhibits show that Cigna's medical directors did review his pre-authorization requests and the information from his doctors before they denied those requests. (*See* FAC Ex. C, ECF No. 43-3 (12/21/17 denial letter) ("After carefully reviewing the information your doctor sent us, we determined the service is not medically necessary. This letter explains why"); FAC Exs. D and E, ECF Nos. 43-4 and 43-5 (12/21/17 and 1/8/18 denial letters with same language).) Plaintiff may be disappointed with Cigna's decision, but that does not mean it was fraud.

Finally, Plaintiff's continued attempt to build a fraud case out of Cigna's alleged "use of computer programs, AI, algorithms or formulas to make coverage determinations" (FAC ¶ 12) is inexplicable. Far from pleading any fraud here under Rule 9(b), Plaintiff admits that human doctors—not some algorithm—reviewed his pre-authorization requests, and even discussed them

in a peer-to-peer conversation with his own doctor. (*See id.* ¶ 44.) And he also admits that his own "claims were not subject to the PxDx algorithm[.]" (*Id.* ¶ 93.) Plaintiff's conjecture about Cigna's supposed use of "AI" and "algorithms or formulas" to review his pre-authorization requests does not pass Rule 8 muster, let alone the heightened requirements of Rule 9(b). For all these reasons, Plaintiff does not plead a fraudulent omission consistent with Rule 9(b).

***No Reliance.*** Plaintiff does not plausibly allege reliance either—which requires identifying "facts from which it may reasonably be inferred that [he] changed [his] position in reliance" on the allegedly fraudulent omission. *See Passiglia v. Northwell Health, Inc.*, 252 F. Supp. 3d 129, 138 (E.D.N.Y. 2017). He does not allege that he received or reviewed any representations from Cigna at all before he decided to enroll in his Wellfleet policy. Plaintiff asserts that he "justifiably relied on Defendants' omissions to [his] detriment" (FAC ¶ 147)—but having failed to identify any such omissions by Cigna (much less consistent with Rule 9(b)), this boilerplate assertion does not carry his burden. *See Lerner*, 459 F.3d at 292 ("in the absence of an allegation that the plaintiffs actually relied on the banks' omissions, they have not stated a claim for fraudulent concealment"); *S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d 481, 515 (S.D.N.Y. 2015), *aff'd sub nom. S.M. v. Oxford Health Plans (N.Y.)*, 644 F. App'x 81 (2d Cir. 2016) (no fraudulent concealment where plaintiff "provides no indication that either she or MCMC reasonably relied on Defendants' alleged misrepresentations and omissions").

***No Intent.*** Finally, Plaintiff also has not pled facts that "give rise to a strong inference of fraudulent intent," *Lerner*, 459 F.3d at 290-91, which "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir.

2004). Plaintiff does not offer any such facts. As he acknowledges, two Cigna doctors reviewed his pre-authorization requests (FAC Exs. C-E) and explained why they concluded that the surgeries he was requesting were not medically necessary and thus not authorized. Plaintiff's mere disagreement with those doctors' conclusions provides no basis to infer fraudulent intent. *See Eternity Glob. Master Fund*, 375 F.3d at 187 (while intent "may be averred generally," this "leeway is not a license to base claims of fraud on speculation and conclusory allegations"); *Dupere v. Ethicon, Inc.*, 2022 WL 523604, at *7 (S.D.N.Y. Feb. 22, 2022) ("conclusory" assertions "that the Defendants acted knowingly and with fraudulent intent" are insufficient).

For any of these reasons, Plaintiff's fraud claim against Cigna should be dismissed.

## II. The Unjust Enrichment Claim (Count IV) Should Be Dismissed.

In Count IV, Plaintiff alleges that Cigna was unjustly enriched by allegedly receiving "a portion of the monthly premium payments paid by Plaintiff and Class members" while "denying coverage of medically necessary services and procedures," in breach of his policy. (FAC ¶¶ 153-55.) This claim fails for three reasons.

First, "where, as here, an unjust enrichment claim is premised on claims of fraudulent conduct, the facts alleging that conduct are subjected to the higher pleading standard of Rule 9(b)." *Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016). Plaintiff's allegations do not satisfy Rule 9(b), as detailed above, and Count IV should be dismissed for this reason alone.

Second, "it is well-settled that the existence of a valid and enforceable contract precludes an unjust enrichment claim relating to the subject matter of the contract," *Spinelli v. NFL*, 96 F. Supp. 3d 81, 135 (S.D.N.Y. 2015)—and here, Plaintiff repeatedly acknowledges that his rights to medical coverage are governed by the terms of a contract, his Wellfleet insurance policy. (*See, e.g.*, FAC ¶ 8 ("Cigna's denials were . . . inconsistent with the terms of the insurance policy under

which Plaintiff was covered.").) The fact that Cigna was not a party to that insurance policy does not change the outcome—because "both . . . New York state courts and [courts] in this district have consistently held that claims for unjust enrichment may be precluded by the existence of a contract" that governs the dispute, "even if one of the parties to the lawsuit is not a party to the contract." *Hudson Neurosurgery, PLLC v. UMR, Inc.*, 2023 WL 6311218, at *8 (S.D.N.Y. Sept. 28, 2023) (collecting cases).

Plaintiff's unjust enrichment claim plainly does "relat[e] to the subject matter of the contract." *Spinelli*, 96 F. Supp. 3d at 135. He alleges that Cigna was unjustly enriched by "denying coverage of medically necessary services and procedures in contravention of the ***insurance contracts*** under which Plaintiff and Class members were due benefits" (FAC ¶ 155)—*i.e.*, he complains that he did not receive his covered benefits under his policy. In fact, Plaintiff brings a breach of contract claim against Wellfleet (Count I) based on that exact same theory—an alleged denial of covered benefits. (*See id.* ¶ 123 ("The Wellfleet Defendants unjustifiably breached the Policy by failing to honor Plaintiff's claim for benefits under the Policy and denying coverage under the Policy").) His unjust enrichment claim should be dismissed accordingly. *See Spinelli*, 96 F. Supp. 3d at 135 (dismissing where "the basis for Plaintiffs' theory that NFL Defendants were unjustly enriched . . . is subject matter clearly governed by [contracts]"); *Hudson*, 2023 WL 6311218, at *8 ("because the matter is controlled by contract, [plaintiff] has no valid claim for unjust enrichment[.]").

Plaintiff cannot get around this principle by pleading his unjust enrichment claim in the alternative to his breach of contract claim. Such alternative pleading is not allowed "where the validity of a contract that governs the subject matter at issue is not in dispute, and the claimant alleges breach of the contract[.]" *Stanley v. Direct Energy Servs.*, LLC, 466 F. Supp. 3d 415, 430-

31 (S.D.N.Y. 2020). Plaintiff does not dispute that his plan is a valid contract; to the contrary, he affirmatively alleges that it is, in the course of pleading his breach of contract claim. (*See* FAC ¶ 121 ("The Policy constitutes a contract[.]").)

Third, to state his unjust enrichment claim, Plaintiff "must show that [Cigna] actually received a benefit that is both specific and direct"; additionally, "for the benefit to be direct, the defendant must either be put in possession of the benefit, or otherwise obtain financial relief because of the benefit." *Hudson*, 2023 WL 6311218, at *6.

Plaintiff has not made this showing because he does not allege that Cigna received any direct or specific monetary benefit from denying his requests for pre-authorization. Instead, he alleges that "Cigna has profited through receipt and retention of a portion of the monthly premium payments paid by Plaintiff and Class members." (FAC ¶ 154.) This theory fails to show a direct benefit as a matter of law. *See Hudson*, 2023 WL 6311218, at *1, 7 (where plaintiff alleged that plan administrator was compensated from insurance "premiums" as well as through "a percentage of savings that it passes on to the fund by reducing payments to providers," and where plaintiff alleged that the plan administrator was unjustly enriched by denying his claim, finding plaintiff's "pass-through benefit theory that Defendant . . . may later get a cut of the Benefit Plan's own financial relief" to be "too indirect to state a claim"). In fact, Plaintiff's theory here is even more attenuated than the pass-through theory that *Hudson* rejected, since Plaintiff does not even allege that Cigna receives any percentage of savings for claims for which pre-authorization is denied. With no allegations of a specific and direct benefit that Cigna retained by denying pre-authorization for his claims, Plaintiff's unjust enrichment claim should be dismissed for this reason as well. *See id.*

## III. The Court Should Strike Plaintiff's Class Allegations.

As to Cigna, Plaintiff seeks to certify the following class and subclass (FAC ¶ 109):

> All persons in the United States whose preauthorization request for medical goods, services, treatment, or prescription drugs under a health insurance plan was denied by Cigna or a Cigna affiliate or subsidiary through Cigna's use of improper policies and procedures to determine medical necessity, including, without limitation, incomplete review of the claims file and medical records, review conducted by professionals not qualified to render an appropriate judgment, or review conducted via computer program, AI, algorithm, or formula, from August 14, 2017 to the present (the "Cigna National Class");
>
> and
>
> All persons whose preauthorization request for medical goods, services, treatment, or prescription drugs under a health insurance plan issued in the State of New York was denied by Cigna or a Cigna affiliate or subsidiary through Cigna's use of improper policies and procedures to determine medical necessity, including, without limitation, incomplete review of the claims file and medical records, review conducted by professionals not qualified to render an appropriate judgment, or review conducted via computer program, AI, algorithm, or formula, from August 14, 2017 to the present (the "Cigna New York Class").

While Cigna recognizes that motions to strike class allegations at the pleadings stage are disfavored, courts do grant such relief "as long as the complaint itself demonstrates that the requirements for maintaining a class action cannot be met[.]" *Borgese v. Baby Brezza Enters. LLC*, 2021 WL 634722, at *2 (S.D.N.Y. Feb. 18, 2021); *see also Talarico v. Port Auth. of N.Y. and N.J.*, 367 F. Supp. 3d 161, 173 (S.D.N.Y. 2019) ("Of course, a motion to strike class claims at the pleading stage can succeed where the claims fail to state a plausible entitlement to relief on behalf of the putative class members") (collecting cases); *Bank v. CreditGuard of Am.*, 2019 WL 1316966, at *12 (E.D.N.Y. Mar. 22, 2019) (although motions to strike "are generally disfavored at the early pleading stages, they may be granted where it is obvious or otherwise clear from the face of the pleading that the matter cannot proceed on a class-wide basis, and there is a basis separate and apart from issues that may be decided on class certification which otherwise bear on the application to strike class allegations"). That is true here.

Plaintiff's proposed class definition is overbroad on its face because a plaintiff may only pursue class claims for which he himself has standing. *See, e.g.*, *Mahon v. Ticor Title Ins. Co.*,

683 F.3d 59, 64 (2d Cir. 2012) ("It is well established that a plaintiff must demonstrate standing for each claim she seeks to press," and "*with respect to each asserted claim*, a plaintiff must always have suffered a distinct and palpable injury to herself") (emphasis in original). Rule 23 does not change this basic Article III requirement (it cannot, under the Rules Enabling Act): "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.*; *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (these standing requirements are "no less true with respect to class actions than with respect to other suits").

Plaintiff's class allegations do not satisfy these standing requirements. For example, Plaintiff does not have standing to represent class members whose claims were denied "by professionals not qualified to render an appropriate judgment," because as explained above, his policy authorizes Cigna to use any "licensed Physicians" to conduct medical necessity pre-authorization reviews, and Plaintiff acknowledges that two Cigna doctors in fact reviewed his pre-authorization requests. (*Supra* at 1, 11-12.) Because Plaintiff has not identified any injury based on this theory, he cannot pursue it on behalf of a class.

Likewise, Plaintiff has not identified any injury from his pre-authorization requests being reviewed "via computer program, AI, algorithm, or formula." The only potential such "algorithm" that Plaintiff identifies is Cigna's PxDx claims review tool, but Plaintiff acknowledges that his "claims were not subject" to it. (FAC ¶ 93; *supra* at 1, 10.)

This lack of standing warrants striking Plaintiff's class allegations. *See Bank*, 2019 WL 1316966, at *12 (striking class allegations as to one of plaintiff's class claims after finding that plaintiff had no standing to pursue that claim). On top of that, it is apparent from the face of the

FAC that Plaintiff's theory based on the alleged "incomplete review of the claims file and medical records" by Cigna's medical directors will require individualized claim-specific review and consideration of what materials those medical directors reviewed before approving or denying pre-authorization, making these claims unsuitable for class treatment. All of Plaintiffs' class theories should be struck accordingly.

Finally, the Court should also strike Plaintiff's request to certify an injunctive relief class under Federal Rule of Civil Procedure 23(b)(2). (FAC ¶ 117.) "Given that plaintiff must demonstrate standing for each form of relief that is sought, plaintiff must show that he has standing to pursue his requested injunctive relief," which requires showing "that the risk of future harm absent the requested injunctive relief is sufficiently imminent and substantial." *Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 355 (N.D.N.Y. 2023). Plaintiff was only "enrolled under the Policy from August 2016 through August 2018," with additional coverage that "ended on November 20, 2018." (FAC ¶ 46.) Because he has not been covered by the Wellfleet policy for years, he cannot show "sufficiently imminent and substantial" risk of future harm absent an injunction. Not only is this fatal to his request under Rule 23(b)(2), but to the extent he seeks injunctive relief on the merits, that claim should also be dismissed for lack of standing.

## CONCLUSION

For above reasons, Cigna respectfully requests that the Court dismiss Counts III and IV, and strike the class allegations from the FAC.

Dated: February 7, 2024
New York, New York.

Respectfully submitted,

By: */s/ Joshua B. Simon*

Joshua B. Simon
Warren Haskel
Dmitriy Tishyevich
John J. Song
Chelsea Cosillos
McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
jsimon@mwe.com
whaskel@mwe.com
dtishyevich@mwe.com
jsong@mwe.com
ccosillos@mwe.com

*Attorneys for Defendants Cigna Health Management, Inc. and The Cigna Group (f/k/a Cigna Corporation)*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2024, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notice of the filing to counsel of record.

*/s/ Joshua B. Simon*
Joshua B. Simon