UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AZAM AHMED, *individually and on behalf of all others similarly situated*,

                Plaintiff,

-against-

CIGNA HEALTH MANAGEMENT, INC. et al.,

                Defendants.

23-cv-8094 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

      Plaintiff Azam Ahmed says that Defendants Wellfleet Insurance, Wellfleet New York Insurance Company, and CIGNA Management, Inc. refused to cover medically necessary procedures in contravention of his health-insurance policy. But Ahmed's breach-of-contract and insurance-law claims come years too late, and his attempt to recharacterize his contract claim as one for fraud or unjust enrichment fails. As such, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

      In August 2016, Azam Ahmed enrolled in New York University's student health-insurance plan. First Am. Compl. ¶ 1, Dkt. 43. The plan was issued by what is now Wellfleet New York Insurance Company and administered by what is now Wellfleet Insurance (together, "Wellfleet"). *Id.*

      Years earlier, Ahmed had been diagnosed with a congenital birth defect, resulting in skeletal abnormalities and symptoms like headaches and joint pain. ¶ 2. He also suffered from facial asymmetry, as well as issues with chewing, articulation, breathing, and jaw locking. *Id.*

      In May 2017, Ahmed had surgery to address his symptoms. His preauthorization request was approved by Wellfleet via a third-party vendor that had been hired by Wellfleet to perform medical-necessity reviews. ¶ 3. The surgery, though partially successful, did not fully resolve his symptoms, and seven months later, Ahmed's surgeons determined that a second surgery was necessary to further remedy his skeletal deformity and ongoing pain and breathing problems. ¶ 4. The surgery would involve a septoplasty, rhinoplasty, and jaw augmentation. *Id.* In conjunction with his doctors, Ahmed sent a preauthorization request for the second surgery to Wellfleet, which was reviewed by CIGNA Management, Inc. (Cigna). ¶¶ 4–5.

      On December 21, 2017, Wellfleet, acting through Cigna, denied the preauthorization request for the jaw augmentation. ¶ 5. The letters indicated that Wellfleet deemed the surgery to be purely cosmetic, not medically necessary. ¶ 6. On January 8, 2018, Cigna then denied the preauthorization for the septoplasty and rhinoplasty, also citing a lack of medical necessity. ¶ 7.

Ahmed sued on September 13, 2023. Compl., Dkt. 1. Drawing on a ProPublica investigative report, he alleged that Cigna relied on an algorithm to deny his preauthorization requests. ¶¶ 84–85. Subsequently, Cigna gave Ahmed a declaration stating that it did not use the algorithm. Dkt. 52 at 1; Dkt. 41 at 2.

On January 8, 2024, Ahmed filed an amended complaint. Dkt. 43. He now says that Wellfleet breached the insurance contract (as well as its implied covenant of good faith and fair dealing) "via the use of improper policies and procedures to determine medical necessity[.]" Am. Compl. ¶ 126. Ahmed also says that Wellfleet violated New York Insurance Law and both Wellfleet and Cigna committed fraud insofar as they concealed their "intention to deny coverage of medically necessary services and procedures in contravention of the Policy." ¶¶ 132, 144. Finally, Ahmed says that Cigna was unjustly enriched by receiving from Wellfleet a portion of the insurance premiums paid by Ahmed "while intentionally and systematically denying coverage of medically necessary services and procedures in contravention of the insurance contract[] under which" he was due benefits. ¶¶ 153, 155. Ahmed also seeks to represent a class of others whose preauthorization requests were denied. ¶ 109.

Both Wellfleet and Cigna now move to dismiss. Dkts. 51, 55. They also move to strike the class allegations.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Claims for fraud, and for violations of New York Insurance Law § 4226 that sound in fraud, are subject to the heightened pleading requirements of Rule 9(b). *See Coppelson v. Serhant*, 2021 WL 2650393, at *2 (S.D.N.Y. June 28, 2021) (fraud); *Brach Family Found., Inc. v. AXA Equitable Life Ins. Co.*, 2016 WL 7351675, at *4 (S.D.N.Y. Dec. 19, 2016) (Section 4226). Rule 9(b) requires that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted).

## DISCUSSION

Ahmed brings claims for breach of contract, violation of N.Y. Insurance Law § 4226, fraud, and unjust enrichment. But the first two claims come too late, and Ahmed's factual allegations are a poor fit for the latter two.

### I. Ahmed lacks standing to seek injunctive relief.

Before addressing whether Ahmed states a claim for relief, the Court must take up a preliminary issue: Wellfleet says that Ahmed lacks standing to pursue injunctive relief because he

is no longer a Wellfleet policyholder. Ahmed counters that he has standing because he "has not alleged that he would never purchase a Wellfleet health insurance policy in the future, and so future harm is possible." Dkt. 57 at 16. Ahmed's argument butchers the law in two respects. First, it is his burden to "allege[] facts that *affirmatively* and plausibly suggest that [he] has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation omitted and emphasis added). Standing doesn't spring from negative implication. And second, to seek injunctive relief, future harm must be "likely," not just "possible." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). Because Ahmed fails to point to allegations of a "real or immediate threat" of injury, this Court lacks subject matter jurisdiction over his claim for injunctive relief. *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).

Ahmed also argues that "some courts in this Circuit have allowed Plaintiffs and classes seeking injunctive and declaratory relief excluding restitution and disgorgement to go forward" under certain conditions. Dkt. 57 at 17. But this argument relates to the use of the Rule 23(b)(2) device. It does not bear on whether Ahmed has standing to pursue injunctive relief. And even in a class action, at least one named plaintiff must have Article III standing. *Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011). Because Ahmed lacks such standing, his claim for injunctive relief must be dismissed.

## II.   Ahmed's breach-of-contract and insurance-law claims are time-barred.

Ahmed sues Wellfleet for both breach of contract and violation of N.Y. Insurance law § 4226. Both claims are time-barred.

Ahmed's contract claim is time-barred because the policy imposes a three-year time limit, meaning that Ahmed brought it two years too late.[1] Although New York typically applies a six-year statute of limitations to breach-of-contract actions, parties may agree to a shorter period. *Polcom USA, LLC v. Affiliated FM Ins. Co.*, 551 F. Supp. 3d 290, 293 (S.D.N.Y. 2021) (citing N.Y. C.P.L.R. § 201). Ahmed does not dispute that there was a three-year limit in his contract, which he attached to his amended complaint.[2] Nor does he dispute that he filed this lawsuit after

---

[1] "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). The complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted). Ahmed attached the document containing the three-year term to his complaint. *See* Dkt. 43-6.

[2] In his opposition brief, Ahmed disputed that there was a three-year limit in his policy. Dkt. 57 at 8. But Ahmed later withdrew that argument. Dkt. 66. Although the Certificate of Coverage attached to the amended complaint says that it "is not a contract," Dkt. 43-6 at 1, both parties treat the Certificate as the relevant contract, so the Court will do the same for purposes of this motion. *But see Tribeca Broadway Assocs., LLC v. Mount Vernon Fire Ins. Co.*, 774 N.Y.S.2d 11, 13 (1st

that time had elapsed. Instead, he argues that the limit should be tolled based on fraudulent concealment. Dkt. 66.

"Fraudulent concealment will toll the statute of limitations if an otherwise time-barred plaintiff establishes three things: (1) there was in fact a wrongful concealment, (2) which concealment prevented the plaintiff's discovery of the nature of the claim during the limitations period, and (3) the plaintiff exercised due diligence in pursuing discovery of the claim." *Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 472 (S.D.N.Y. 2010). Ahmed fails to identify any wrongful concealment that prevented him from discovering his breach-of-contract claim. He says that "[i]t was not until the past year, beginning with the publication of ProPublica's report on Cigna's pattern and practice of improper preauthorization denials that grew into an issue garnering extensive media coverage and Congressional interest, that Plaintiff even understood he had an injury for which Wellfleet was responsible." Dkt. 57 at 10. But this argument makes no sense because as Ahmed now concedes, his breach-of-contract claim does not arise from the denials that were the subject of the ProPublica report. Am. Compl. ¶ 93 (acknowledging that "Mr. Ahmed's claims were not subject to the PxDx algorithm").

Instead, as is evident from the face of the complaint as well as the documents attached to it, Ahmed's claim (to the extent it is specific) arises from facts that were known to him back in 2017 and 2018 when he received the denial letters. For example, to the extent that his claim arises from the denials themselves, he knew of those denials back in 2017 and 2018. To the extent that his claim arises from Cigna's having an obstetrician-gynecologist and gastroenterologist review his preauthorization requests, the denial letters said who had reviewed them. Am. Compl. ¶¶ 10, 67; Dkt. 43-3 at 6; Dkt. 43-4 at 5. And to the extent that his claim arises from the failure to consider required factors, the information Wellfleet considered was noted in the letters; indeed, Ahmed now relies on those letters to explain why Wellfleet's review was in breach of the policy. Am. Compl. ¶¶ 42, 65–69. In short, nothing prevented Ahmed from knowing the nature of his contract claim within the three-year limitations period. Indeed, the complaint alleges that Ahmed challenged the denial of his preauthorization requests back in 2018, showing that he was aware of the nature of his claim within the limitations period. Am. Compl. ¶¶ 77–82.

Ahmed's § 4226 claim is also time-barred. Section 4226 bars an insurer from "issu[ing] or circulat[ing] … any illustration, circular, statement or memorandum misrepresenting the terms, benefits or advantages of any of its policies or contracts." N.Y. Ins. Law § 4226. Wellfleet says that this claim is untimely because more than three years elapsed between when the policy was "issued or sold" and when this lawsuit was brought. Dkt. 52 at 10 (quoting *Malek v. AXA Equitable Life Ins. Co.*, 2023 WL 2682408, at *10 (E.D.N.Y. Mar. 29, 2023)). Ahmed does not dispute that § 4226 claims must be brought within three years of the policy's issuance or sale but argues that

---

Dep't 2004) ("A certificate of insurance is only evidence of a carrier's intent to provide coverage but is not a contract to insure the designated party nor is it conclusive proof, standing alone, that such a contract exists.").

this claim is subject to tolling based on fraudulent concealment, citing C.P.L.R. § 203(g)(1). Dkt. 57 at 9.

First, it is unclear whether § 203(g)(1) or fraudulent concealment applies to § 4226 claims. Other courts have held that § 4226 claims are not subject to tolling under § 203(g)(1). *See Malek*, 2023 WL 2682408, at *10–11 (citing *Russo v. Mass. Mut. Life Ins. Co.*, 711 N.Y.S.2d 254, 256 (3d Dep't 2000), *rev'd on other grounds sub nom. Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078 (N.Y. 2001)); *see also Goldberg v. Mfrs. Life Ins. Co.*, 672 N.Y.S.2d 39, 43 (1st Dep't 1998) (holding that claims under analogous N.Y. Ins. Law § 2123 must be brought within three years). And Ahmed cites no case tolling a § 4226 claim under either § 203(g)(1) or the doctrine of fraudulent concealment more generally.

In any event, just as with the contract claim, Ahmed fails to plausibly allege fraudulent concealment. Ahmed says that Wellfleet violated § 4226 "by concealing and failing to disclose to Plaintiff and members of the Class of their intention to deny coverage of medically necessary services and procedures in contravention of the Policy." Am. Compl. ¶ 132. But Ahmed knew that Wellfleet denied coverage of the services he says were medically necessary back in 2017 and 2018. He also had Wellfleet's reasons for the denial, and the policy that serves as the basis for his claim. More than three years have passed since all of that. So like Ahmed's contract claim, his § 4226 claim must be dismissed as untimely.

### III.   Ahmed's fraud claims must be dismissed.

Perhaps anticipating that his contract and § 4226 claims would be dismissed as untimely, Ahmed also brings a claim for fraud, which has a longer statute of limitations, against both Wellfleet and Cigna. But fraud's no fit for the factual allegations here.

"The elements of fraud under New York law are [1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 297 (S.D.N.Y. 2011) (internal quotation marks omitted, alterations in original). But "a fraud claim will not lie if it arises out of the same facts as plaintiff's breach of contract claim." *Id.* at 298. Defendants say that the fraud claim here arises out of the same facts as the breach-of-contract claim because it is based on Defendants' "inten[tion] to deny coverage of medically necessary procedures in contravention of the Policy." Am. Compl. ¶ 143. Ahmed counters by pointing out that "parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *Sawabeh*, 832 F. Supp. 2d at 298 (citation omitted). Ahmed says that Defendants had duties to him "separate from" the contract and that the fraud "warrants an assessment of punitive damages." Dkt. 57 at 16. Both arguments fail, and the fraud claims are dismissed.

First, Ahmed fails to identify any duties that are "separate" from the duty of performance. Ahmed appears to argue that the "special facts" doctrine imposed a duty on Defendants to disclose their intention to breach the contract. But this argument fails for multiple reasons. To start, the doctrine "usually" applies "in the context of business negotiations where parties are entering a contract." *Lerner*, 459 F.3d at 292 (citation omitted). The complaint here doesn't allege any negotiations between Ahmed and Defendants (indeed, Cigna isn't a party to the contract, and there's no allegation of any communications between Ahmed and Cigna prior to the denial letters), so it's unclear whether the special-facts doctrine applies.

Second, even if it does, Ahmed does not identify any fact that Defendants failed to disclose. "Pursuant to the special facts doctrine, a party may have a duty to disclose information particularly within its knowledge, if (1) the material fact was information peculiarly within the knowledge of the defendant, and (2) the information was not such that could have been discovered by plaintiff through the exercise of ordinary intelligence." *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 638 (S.D.N.Y. 2014) (cleaned up). Ahmed says that Defendants did not disclose their "intention to deny coverage of medically necessary services and procedures in contravention of the Policy." Am. Compl. ¶ 144. But "knowledge of intention" to breach a contract is "not the kind of fact[] required [to be disclosed] under the special facts doctrine." *First Hill Partners*, 52 F. Supp. 3d at 638. Courts have repeatedly rejected attempts to spin a breach-of-contract claim into a fraud claim by alleging an intention to breach. *See TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 91 (2d Cir. 2005); *Cronos Grp. Ltd. v. XComIP, LLC*, 64 N.Y.S.3d 180, 190 (1st Dep't 2017); *Non-Linear Trading Co. v. Braddis Assocs., Inc.*, 675 N.Y.S.2d 5, 13 (1st Dep't 1998).

Ahmed attempts to distinguish this authority by arguing that here, the Defendants intended to breach when they executed the contract. Dkt. 57 at 16. But the cases cited above contained the same allegation. *See, e.g.*, *TVT Recs.*, 412 F.3d at 90–91 (allegation that defendant "failed to disclose that it *never* intended to perform its obligations under the [contract]" (emphasis added)); *Non-Linear Trading Co.*, 675 N.Y.S.2d at 13 ("A cause of action for breach of contract cannot be converted into one for fraud by merely alleging that defendant *did not intend* to fulfill the contract." (emphasis added and citation omitted)). It is true that some courts have said that "making a promise to do something in the future, while harboring an undisclosed intention to break that promise when the time comes to perform, constitutes a misrepresentation of an existing fact." *Cronos Grp.*, 64 N.Y.S.3d at 190; *see Non-Linear Trading Co.*, 675 N.Y.S.2d at 13 (suggesting that a statement of future intentions, coupled with "a present intention to deceive," could be actionable as fraud (citation omitted)). But as the First Department has explained, "where the promised performance is an obligation of the promisor under an enforceable contract between the parties, and the only damages sought are those recoverable for a breach of contract, allegations of such an insincere promise are redundant of a claim for breach of the parties' contract and, therefore, do not state a cause of action for fraud." *Cronos Grp.*, 64 N.Y.S.3d at 190 (internal quotation marks omitted). "The rule that an insincere promise to perform a contractual obligation is not actionable as fraud—

6

absent which contract claims would be routinely pleaded in the alternative as fraud—guards against the erosion of the distinction between the two causes of action." *Id.*[3]

As to Ahmed's argument that the fraud claim alleges "special damages" because it requests punitive damages, courts have repeatedly held that "a general request for punitive damages is not enough to differentiate the damages recoverable for fraud from those sought for breach of contract." *Transnat'l Mgmt. Sys. II, LLC v. Carcione*, 2016 WL 7077040, at *6 (S.D.N.Y. Dec. 5, 2016) (quoting *Russell Publ'g Grp., Ltd. v. Brown Printing Co.*, 2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014)); *see also Sekisui Am. Corp. v. Hart*, 2012 WL 5039682, at *3 (S.D.N.Y. Oct. 17, 2012); *Allen v. Cox*, 2011 WL 2436705, at *4 (S.D.N.Y. June 16, 2011); *Krantz v. Chateau Stores of Can. Ltd.*, 683 N.Y.S.2d 24, 25 (1st Dep't 1998). Ahmed cites no case holding otherwise.

### IV. Ahmed's unjust-enrichment claim must be dismissed.

Finally, Ahmed's unjust-enrichment claim against Cigna must also be dismissed. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 119 (S.D.N.Y. 2023) (citation omitted). Ahmed says that Cigna was unjustly enriched by getting "partial premium payments while intentionally and systematically denying coverage of medically necessary services and procedures[.]" Am. Compl. ¶ 155. Cigna argues that this claim must be dismissed because, among other reasons, it concerns the subject matter of a valid and enforceable contract.

The Court agrees that the existence of a contract precludes Ahmed's unjust-enrichment claim. The complaint frames the unjust-enrichment claim as arising from the same facts as the contract claim: it alleges that Cigna was "unjustly enriched" by retaining partial premium payments while "denying coverage of medically necessary services and procedures in contravention of the insurance contracts." Am. Compl. ¶ 155. New York courts have consistently held that a plaintiff may not recover for unjust enrichment where a contract governs the subject matter of the dispute, even if the defendant is not a signatory to the contract. *See Bd. of Managers v. Azogui*, 197 N.Y.S.3d 29, 30 (1st Dep't 2023); *22 Gramercy Park, LLC v. Michael Haverland Architect, P.C.*, 96 N.Y.S.3d 196, 198 (1st Dep't 2019); *Norcast S.ar.l. v. Castle Harlan, Inc.*, 48 N.Y.S.3d 95, 98 (1st Dep't 2017); *Kordower-Zetlin v. Home Depot U.S.A., Inc.*, 22 N.Y.S.3d 22, 24 (1st Dep't 2015); *Seneca Pipe & Paving Co. v. S. Seneca Cent. Sch. Dist.*, 880 N.Y.S.2d 807,

---

[3] The complaint also suggests that Defendants had a separate legal duty arising from partial disclosures in the policy about the coverage of medically necessary services: "Defendants made partial disclosures about the coverage of medically necessary services and treatments without revealing the true intention to deny coverage of such." Am. Compl. ¶ 145(d). This argument suffers from the same defect as Ahmed's special-facts argument: it attempts to spin a breach-of-contract claim into a fraud claim by alleging that the omitted fact was Defendants' intention to breach the contract. But as discussed, New York courts have repeatedly rejected attempts to reclassify breach-of-contract claims as fraud claims based on an intention to breach.

808 (4th Dep't 2009); *Bellino Schwartz Padob Advert., Inc. v. Solaris Mktg. Grp., Inc.*, 635 N.Y.S.2d 587, 588 (1st Dep't 1995).[4]

Indeed, New York courts have applied this rule in circumstances closely analogous to those here. In *Kordower-Zetlin*, for example, the plaintiff had a contract with Home Depot. 22 N.Y.S.3d at 23. Under the contract, Home Depot would act as a general contractor to renovate her home. *Id.* Home Depot hired CRC and Esha to act as subcontractors. *Id.* Kordower-Zetlin alleged that CRC and Esha performed the renovation in a shoddy manner, and she sued Home Depot for breach of contract and CRC and Esha for unjust enrichment. *Id.* at 23–24. The First Department held that the unjust-enrichment claim must be dismissed "because the subject matter of the claim is governed by plaintiff's contract with Home Depot." *Id.* at 24. The court explained that "[t]his is so even though the quasi-contract claim is asserted against the subcontractors, who were not signatories to the contract." *Id.* This case is on all fours with *Kordower-Zetlin*: Ahmed sues Cigna, a subcontractor and non-signatory to his contract with Wellfleet, for unjust enrichment for its part in the alleged breach of that contract.

"As a federal court applying state law, [this Court is] generally obliged to follow the state law decisions of state intermediate appellate courts." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005) (citation omitted). This Court may deviate from those decisions if there is "contrary New York authority or other persuasive data establishing that the highest court of the state would decide otherwise." *Id.* at 200 (cleaned up). Ahmed does not cite either.

The Court acknowledges that there are some cases (although Ahmed himself fails to cite them) allowing unjust-enrichment claims against a nonparty under certain circumstances. *See, e.g.*, *Manhattan Chrystie St. Dev. Fund, LLC v. 215 Chrystie Invs. LLC*, 2024 WL 2752026 (1st Dep't 2024); *Lee v. Kylin Mgmt. LLC*, 2019 WL 917097 (S.D.N.Y. Feb. 25, 2019); *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 641 (S.D.N.Y. 2014); *Bradkin v. Leverton*, 257 N.E.2d 643 (N.Y. 1970). But this case presents none of the considerations animating those decisions.

First, in many of those cases, the dispute did not arise from a breach of contract. Instead, a nonparty to the contract—who was not "purporting to act by, through, or under the entity that had entered into the contract"—took a benefit that was the subject of the contract without compensating the other party. *Natura Dev. N.V. v. HEH Advisors LLC*, 2020 WL 550661, at *6 (S.D.N.Y. Feb. 4, 2020). In *Bradkin*, for example, the plaintiff had a contract with Federman & Co. to find companies in need of financing in exchange for a finder's fee as well as 10% of net profits from future financings. 257 N.E.2d at 644. The plaintiff found a company and was paid the initial fee. *Id.* But an officer of Federman arranged to provide subsequent financing to the company

---

[4] This has also been the prevailing rule in this district. *See, e.g.*, *Hudson Neurosurgery, PLLC v. UMR, Inc.*, 2023 WL 6311218, at *8 (S.D.N.Y. Sept. 28, 2023); *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207–08 (S.D.N.Y. 2016).

personally and then refused to pay the plaintiff. *Id.* The Court of Appeals held that the plaintiff could bring an unjust-enrichment claim against the officer, explaining that it was unjust for the officer to "obtain[] the benefit of the plaintiff's labors" without compensating him. *Id.* at 646. Unlike this case, in *Bradkin* there was no breach of contract. Federman didn't breach its contract with the plaintiff, and the officer—who was acting in his individual capacity in providing the financing at issue—didn't have one. *See also Lee*, 2019 WL 917097, at *3 (explaining that the gravamen of plaintiff's claim "is not that [defendant] breached a contractual obligation to *pay* [him]" but that the defendant "unjustly *received* and retained" his money); *First Hill Partners*, 52 F. Supp. 3d at 641 (explaining that "no valid contract governs the subject matter at issue" because the contract governed an asset sale rather than the foreclosure sale that actually occurred). Here, by contrast, the dispute derives from conduct "in contravention of the insurance contract[]" by a party that was acting as a subcontractor to the counterparty to the contract. Am. Compl. ¶ 156. The dispute arises from the actual breach of contract that Cigna allegedly facilitated. Ahmed does not cite (nor has the Court found) a case allowing an unjust-enrichment claim in analogous circumstances.

   Second, several of the cases in this line involved diversion of funds from the party who breached the contract to the nonparty against whom the unjust-enrichment claim was brought. In *Lee*, for example, plaintiff James Lee had sued his former employer, Kylin, for breach of contract (among other things), alleging that Kylin withheld $3 million in compensation to which he was entitled. 2019 WL 917097, at *1. After the lawsuit was filed, Lee learned that Kylin's principal, Ted Kang, had pocketed some of that $3 million and sought to amend the complaint to add a claim for unjust enrichment against Kang. *Id.* In holding that an unjust-enrichment claim could be brought, the court relied in part on the fact that barring such a claim would "create a perverse incentive for closely held companies that are parties to a contract to transfer the moneys owed on a contract to their principals." *Id.* at *3; *see also Manhattan Chrystie*, 2024 WL 2752026, at *1 (allowing unjust-enrichment claim against nonparty where plaintiff alleged that "money flowed from the" contracting party to the nonparty defendants, resulting in the contracting party's "inability to pay plaintiff"). Here, by contrast, there is no allegation that Wellfleet diverted money to Cigna to avoid its contractual obligations to Ahmed. In fact, the equities tilt in the opposite direction here because recognizing a claim for unjust enrichment against Cigna would allow Ahmed to circumvent the three-year limitation on lawsuits in his contract with Wellfleet. *Cf. Bradkin*, 257 N.E.2d at 646 (allowing unjust-enrichment claim where plaintiff had "fully performed his part of the contract"). In sum, Ahmed fails to identify (nor could the Court find) a case allowing an unjust-enrichment claim where (1) the dispute derived from conduct "in contravention" of a contract by the contracting party's subcontractor, and (2) the contract barred a breach-of-contract claim against the actual party to the contract.

   Ahmed argues that in any event, his unjust-enrichment claim can be pleaded in the alternative. Ahmed cites law explaining that "where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of [unjust enrichment] as well as breach of contract." Dkt. 58 at 15 (quoting *Goldman v.*

9

*Simon Prop. Grp., Inc.*, 869 N.Y.S.2d 125, 135 (2d Dep't 2008)). But there is no dispute over the existence of a contract here; the complaint acknowledges that there is one, and Defendants don't dispute that. Am. Compl. ¶ 121 ("The Policy constitutes a contract[.]"). And there is no bona fide dispute over whether the contract applies to the dispute at issue: on its face, Ahmed's unjust-enrichment claim is premised on Cigna's denial of services "in contravention of the insurance contract[]." ¶ 155.

Perhaps sensing that the weight of authority supports Cigna, Ahmed tries to reframe his unjust-enrichment claim as deriving from "allegations of fraudulent and unjust concealment" rather than the breach of contract. Dkt. 69 at 2. Even as reframed, Ahmed's claim fails. "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional … tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Ahmed alleges "that Cigna failed to disclose to [him] that it intended to deny coverage of medically necessary procedures in contravention of the Policy." Dkt. 69 at 2 (citing Am. Compl. ¶¶ 143–44). That is precisely the same allegation that underlies Ahmed's fraud claim, making it duplicative. *Cf. Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli*, 187 N.Y.S.3d 702, 706 (2d Dep't 2023) (holding that unjust-enrichment claim was duplicative of fraud claim where it was based on the same set of facts). Indeed, in advancing this argument in his supplemental letter, Ahmed actually cites the allegations in the fraud section of his complaint. As explained above, Ahmed's fraud claim is defective because intention to breach is "not the kind of fact[] required [to be disclosed] under the special facts doctrine." *First Hill Partners*, 52 F. Supp. 3d at 638. In addition, Ahmed fails to allege that he had any relationship with Cigna prior to the denials, making it unclear whether the special-facts doctrine even applies. *Lerner*, 459 F.3d at 292. To the extent that Ahmed's fraud claim is defective, "an unjust enrichment claim cannot remedy the defects" and must therefore be dismissed. *Corsello*, 967 N.E.2d at 1185.

## CONCLUSION

Ahmed initially brought this case thinking that Defendants used an algorithm to deny his preauthorization request. Having now received confirmation that this was not so, Ahmed tries to pivot. But the pivot leads Ahmed straight into a wall. His claims are either untimely or are a poor fit for the doctrine he tries to cram them into. As such, Defendants' motions to dismiss are granted with prejudice. Defendants' motion to strike the class allegations is denied as moot.

The Clerk of Court is directed to terminate Dkts. 51 and 55.

SO ORDERED.

Dated: July 8, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge